[No. 18879. Department One. May 15, 1925.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES CERENZIA, *Appellant*.[1]

WITNESSES (78)—CROSS-EXAMINATION—SCOPE—LIMITATION TO DIRECT EXAMINATION. Where, in a prosecution for robbery, the defense was that accused had been forced to drive the automobile employed by his co-defendants, it is error to exclude cross-examination of a co-defendant who turned states evidence, tending to show whether there had been any previous agreement that accused would take part in the crime, although there had been no particular mention thereof on direct examination.

SAME (101)—CROSS-EXAMINATION—CREDIBILITY OF WITNESS. In a prosecution for robbery, it is error to exclude cross-examination of a state's witness as to whether she had received immunity, where her evidence showed that she was present and heard all the plans for the crime, and might be chargeable with complicity or some offense connected with the crime.

CRIMINAL LAW (347)—NEW TRIAL—MISCONDUCT OF JURY. An unauthorized inspection by the jury of an automobile alleged to have been used in a robbery is ground for a new trial.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered February 2, 1924, upon a trial and conviction of robbery. Reversed.

*Plummer, Zent & Lovell,* for appellant.

*Chas. H. Leavy* and *Edward M. Connelly,* for respondent.

BRIDGES, J.—The appellant and four others were jointly charged with robbing a bank at Medical Lake, in this state. Before the trial, the other four plead guilty. The appellant stood trial and was found guilty by a jury and sentenced. .

There was testimony tending to show the following facts: That all the defendants, including the appellant,

[1]Reported in 236 Pac. 80.

had for sometime been acquainted one with the other; that, a few days before the actual robbery took place, the appellant took the defendants in his automobile out to Medical Lake, several miles from Spokane, some of the witnesses testifying that the trip was for the purpose of looking over the situation prior to robbing the bank. On the day it was planned to commit the robbery, it was known to all of the parties that appellant's car was out of commission. Two of the defendants who plead guilty went out on the streets of Spokane and held up a man by the name of DeBall, who was sitting in his Hudson car. They required him to sit on the floor between the front and rear seats. The car was then driven to the Leonard Hotel in Spokane, where the other defendants and the appellant then were. The whole party then got into the automobile and started for Medical Lake, the appellant doing the driving. On the front seat with him was one of the defendants, on the rear seat were three others, and sitting on the floor between the two seats, partly covered with a coat, was DeBall, the owner of the car. Having reached Medical Lake, all those who plead guilty got out of the car and did the actual work of holding up the bank, while the appellant was left with the car. Meanwhile DeBall was sitting on the floor of the automobile. After the holdup, the party drove back towards Spokane, the appellant doing the driving. Before they reached the city they were arrested. The appellant's defense was that he had no connection with the robbery, and that he drove the automobile because he was compelled to do so by his associates.

Dyer, who was one of those who had plead guilty, became a witness for the state. His testimony in chief covered many, if not all, of the facts we have recited. On cross-examination he was asked this question: "Had there been any previous arrangements made for

going to Medical Lake?'' The court sustained the state's objection to this question. The court also sustained the state's objection to the following question propounded on cross-examination to the same witness: ''Had you made any arrangements, had you had any discussion with Jimmy Cerenzia (the appellant) with reference to going out there (to Medical Lake) with you on that date, prior to that time?''

The appellant now claims that the ruling of the court was erroneous, to his prejudice. The state takes the position that the questions were not proper cross-examination because in the direct examination no particular mention had been made concerning prior arrangements with the appellant to go to Medical Lake. It seems to us that the learned court erred in sustaining objections to these questions. The appellant, while admitting that the robbery had occurred and that he had driven the car, made his whole defense on the theory that he had been forced to play his part. Dyer's examination in chief had strongly indicated that the appellant was connected with the robbery and that his portion of it was to drive the automobile, and that full plans had been made prior to the day of the crime. Under these circumstances, it was not only proper, but it seems to us very material to the defendant's defense, to inquire of the witness Dyer whether, prior to the day of the robbery, any arrangements had been made between him and his other associates on the one hand and the appellant on the other to make this holdup. If no prior arrangements had been made with the appellant, the proof of that fact would tend to support his defense.

The state had another witness named Olive Hill. Her testimony was to the effect that she was well acquainted with the defendants as well as appellant, and that she and some of them lived at the Leonard

Hotel. Her testimony also tended to show that the appellant was as much connected with the robbery as the defendants who had plead guilty. She had been present when all of them had discussed the robbery and when at least a part of the plans therefor were made. After the defendants and appellant were arrested, the officers also took her in charge and put her in jail. She did not seem to know whether she was taken in charge because they intended to implicate her in the robbery or for some other crime, or merely to hold her as a witness. Under these circumstances, and on cross-examination, she was asked the following question: "Has there been any promise made to you by the prosecuting attorney's office, Miss Hill, with reference to leniency in your matter in the event you testify against Jimmy here (meaning the appellant)." The court sustained the state's objection to this question. This, it seems to us, was error. It is not impossible that the state may have contemplated charging this witness with complicity in the robbery. Certain it is from her testimony that she knew a good deal about it. It is always competent to ask a witness questions of this character as tending to affect his credibility. The state's contention is that the question was improper because there was nothing to show that the witness had been charged with any offense. Such a showing was not necessary under the circumstances. Her own testimony showed that the state might elect, and had some grounds to elect, to lay some charge against her in connection with this affair. It was important, therefore, to know whether she had been promised immunity, because the jury might believe that that fact would influence her testimony.

We are also of the belief that a new trial should have been granted because of the action of the jury in making an inspection, without the express order of the

court, of what they supposed was the automobile which carried the robbers from Spokane to Medical Lake. Since this error will not occur at another trial, we deem it unnecessary to go more into the details of this matter.

On account of the errors pointed out, the judgment is reversed and the cause remanded for new trial.

TOLMAN, C. J., MAIN, ASKREN, and PARKER, JJ., concur.