[No. 22004.   Department Two.   May 28, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
DEWEY TRIBOLET, *Appellant*.[1]

*W. W. Zent* and *Powell & Herman,* for appellant.
*Joseph H. Johnston,* for respondent.

FRENCH, J.—The appellant was charged by an
amended information, under the aiding and abetting
statute, with the crime of attempting to commit rob-
bery, and by count II of the crime of burglary, and by
count III of the crime of larceny.   From a judgment
of conviction on all three counts, this appeal is taken.
The facts are as follows:

[1]Reported in 288 Pac. 243.

In the early part of November, 1928, appellant was acting as an extra taxicab driver for the Diamond Taxicab Company in Spokane. He owned his own car. For some years appellant had known Ted Archer, and on the afternoon of November 9, 1928, Archer introduced him to two men referred to in the information as "John Doe" and "Richard Roe," and referred to in the testimony as "Slim" and "Brownie." On the evening of November 9, appellant driving his own car, met Archer, and thereafter they picked up the two men known as Slim and Brownie, and drove to the town of Edwall, some forty or fifty miles from Spokane. While in the town of Edwall, appellant at all times remained in his car. The other three completed a larceny, a burglary, and attempted to commit a robbery. Thereafter the parties all drove into the city of Spokane, the two men known as Slim and Brownie disappeared, Archer was arrested and on his plea of guilty was sentenced to the penitentiary.

It is admitted by all the witnesses who testified that appellant's participation in the commission of the crime set. forth in the information was limited to driving the automobile which was used to convey the three active participants from Spokane to the town of Edwall, and back again after their criminal activities in the town of Edwall had ceased. Appellant's defense is that he had known Archer for some years, that he had no knowledge of the intended criminal activities of the three men when he left Spokane for Edwall, and that, when he discovered their intended criminal activities, he was coerced and compelled to participate therein to the extent of driving the car.

Appellant's first assignment of error was that the evidence was insufficient to sustain conviction, in that the prosecution failed to establish any criminal in-

tent on his part. The fact that he drove the automobile in which the three men who actively participated in the series of crimes rode from Spokane to Edwall; that he was present waiting in the car for them to use to make their escape, and that these facts are not only testified to by witnesses for the state, but are admitted by the defendant himself, we think is sufficient to take the question of his criminal intent to the jury, and would warrant the jury in convicting if they believed he voluntarily did the things which he himself admits doing on the night in question.

■ Counsel also assigns as error failure to strike certain testimony of the witness Miles, but the record shows that the most of this testimony was developed on cross-examination, and fails to show any motion to strike. We cannot, therefore, review the claimed error.

■ As has been heretofore stated, appellant's position was that, from the time he discovered that the three men who were with him were actually engaged in a criminal enterprise, he was coerced into doing the things which he did. Ted Archer was called as a witness for the state, and, after detailing generally about getting appellant to drive the three of them out to Edwall, was, on cross-examination by appellant's counsel, asked particularly concerning other activities in the town, testifying in part as follows:

"Q. Was there any conversation in here about what was to go on? A. Nothing but talking about that railroad, about them fellows sticking up them trains. Q. Yes. Enough to scare anybody, wasn't it? Was there any time, Mr. Archer, from the time that you got into the city of Edwall that Mr. Tribolet could have got away from you fellows, got away from Slim and Brownie, put it that way? A. No. At no time. Q. There was no time? A. No. Q. Now, if Mr. Tribolet had started, what would they have done? A. I don't know what they would have done. I don't know their

mind. Q. What would you have done, if anything? A. Well, I would have taken care of myself. I wouldn't let my get-away get away. Q. Just what do you mean by that, please? Your get-away is the automobile, isn't it. A. Yes. Naturally I wanted to keep the automobile there, have some way to get out. Q. And they would have probably done the same thing, wouldn't they? A. I don't know what they would have done. Q. What is the fact, Mr. Archer, whether Mr. Tribolet voluntarily took any part in this matter, in this bank robbery?

"MR. JOHNSTON: I object, if the court please, it is purely a conclusion. The testimony shows his activities.

"THE COURT: Sustained.

"MR. MACK: Exception.

"Q. Could Mr. Tribolet have done anything other than what he did?

"MR. JOHNSTON: I object, if the court please. It is a conclusion. He might do a hundred things that the witness don't know anything about.

"THE COURT: Sustained.

"MR. MACK: Exception.

"Q. What kind of guns did you fellows have? A. Thirty-two twenty, in a forty-five frame. Q. Now these men, what was the size of Slim, how tall and how broad? A. Well, I don't—I should judge he was about as tall as I am. A little thinner. Q. And how tall are you, Ted? A. Six foot. Q. And how tall was Brownie? A. Maybe a little shorter than I am. Q. And how heavy? A. About one hundred and eighty pounds. He was awful husky. Q. You introduced these two men to Mr. Tribolet? A. Yes. Q. He never knew them before that meeting? A. No. Q. Had Mr. Tribolet ever been on any episode or deal with you at all?

"MR. JOHNSTON: To which I object, if the court please. It is not involved in this case in any manner. We are not trying to try the record of the men.

"THE COURT: Sustained."

The questions to which objection was sustained go to the very gist of the defense which appellant was at-

tempting to make. This witness was called by the state, and was one of the principals in the entire transaction. Appellant was charged only with aiding and abetting. These questions to which objections were sustained did not entirely call for the conclusion or opinion of the witness. He and his companions, "Slim" and "Brownie," were the only people in the world, so far as this record is concerned, who knew as a fact whether or not appellant was acting voluntarily or was coerced. He knew as a fact whether or not appellant was on that "episode or deal" with the others, and we think should have been permitted to so state. The information sought on cross-examination, we think, comes squarely within the rules announced in *State v. Cerenzia,* 134 Wash. 500, 236 Pac. 80. See, also, *State v. Martina,* 27 N. M. 1, 192 Pac. 507.

Reversed, with instructions to grant a new trial.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.

HOLCOMB, J., concurs in the result.