**UNITED STATES of America,**
**Plaintiff,**

v.

**BLACKFEET TRIBE OF the BLACK-**
**FEET INDIAN RESERVATION et al.,**
**Defendants.**

**Civ. No. 3197.**

United States District Court,
D. Montana,
Great Falls Division.

Oct. 10, 1973.

Robert P. Gannon, Asst. U.S. Atty., Butte, Mont., for plaintiff.

John P. McDermott, University of Montana, Missoula, Mont., Philip E. Roy, Browning, Mont., for defendants.

## OPINION

RUSSELL E. SMITH, Chief Judge.

A statute of the United States prohibits the possession of gambling devices on

an Indian reservation.[1] Notwithstanding, the Blackfeet Business Council passed a resolution authorizing gambling on the reservation and the licensing of mechanical gambling devices. Thomas Harney, an agent of the Federal Bureau of Investigation, seized four slot machines and another mechanical gambling device from one Harper (apparently a licensee of the Blackfeet Tribe) and stored the same with a special officer of the Bureau of Indian Affairs. Thereafter the Blackfeet Tribal Court issued an order restraining all persons from removing the seized articles from the reservation. The order was served upon Thomas Harney who, after consultation with the United States Attorney, removed the gambling devices from the reservation and stored them in Great Falls. One of the judges of the tribal court then cited the United States Attorney to show cause why he should not be cited for contempt of the tribal court. This application for preliminary injunction seeks to restrain the Blackfeet Tribe and its officers from further proceeding with the contempt citations or interfering with the Federal Bureau of Investigation in the investigation of violations of federal statutes.

■ The defendants urge that the Blackfeet Tribe is sovereign and that the jurisdiction of the tribal court flows directly from that sovereignty. No doubt the Indian tribes were at one time sovereign and even now the tribes are sometimes described as being sovereign. The blunt fact, however, is that an Indian tribe is sovereign to the extent that the United States permits it to be sovereign—neither more nor less.[2] In the Blackfeet Treaty (11 Stat. 657, at 659, (1855)) the Blackfeet Tribe acknowledged its "dependence on the government of the United States." While for many years the United States recognized some elements of sovereignty in the Indian tribes and dealt with them by treaty, Congress by Act of March 3, 1871 (16 Stat. 566, 25 U.S.C. § 71) prohibited the further recognition of Indian tribes as independent nations. Thereafter the Indians and the Indian tribes were regulated by acts of Congress. The power of Congress to govern by statute rather than treaty has been sustained. United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). That power is a plenary power (Matter of Heff, 197 U.S. 488, 25 S.Ct. 506, 49 L.Ed. 848 (1905)) and in its exercise Congress is supreme. United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916). It follows that any tribal ordinance permitting or purporting to permit what Congress forbids is void.

■ It is the duty of the Federal Bureau of Investigation to detect and prosecute crimes against the United States (28 U.S.C. § 533; 28 C.F.R. § 0.85), and also to seize gambling devices illegally possessed. 15 U.S.C. § 1177; 28 C.F.R. § 0.86. It is beyond the power of the tribe to in any way regulate, limit, or restrict a federal law officer in the performance of his duties, and the tribe having no such power the tribal court can have none.[3]

■ Defendants argue that the tribe has jurisdiction over personal property

---

1. "It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of Title 18." (15 U.S.C. § 1175.)

2. A tribe may not, except in the exact manner prescribed by Congress, even cede a portion of jurisdiction. Kennerly v. District Court of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971).

3. I rest this premise on the basic lack of power in the tribe to act contrary to federal law rather than upon the fact that the ordinances of the tribe (Chapter 1, § 1, Blackfeet Law and Order Code) and the regulations of the Secretary of the Interior (25 C.F.R. § 11.1 et seq.) exclude the kind of jurisdiction claimed here.

found on the reservation and that hence there was an in rem jurisdiction over the mechanical gambling devices. The answer to this is that the gambling devices were contraband and when seized by the United States were lawfully in the possession of the United States and that whatever in rem jurisdiction the Blackfeet Tribe might have had prior to the seizure ceased to exist.

■ It is urged that even though there was no jurisdiction to issue the restraining order the tribal court had jurisdiction to determine its jurisdiction and that hence those violating the restraining order were guilty of contempt. Reliance is placed upon United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Apart from the fact that there is some question as to the authoritative effect of *United Mine Workers*[4] the Court did recognize that the rule that a court has jurisdiction to determine its jurisdiction is subject to the exception that the claim of jurisdiction must be substantial. Nothing in the statutes, the case law, or in the factual history of the Blackfeet Reservation would permit a conclusion that there could be any substantial claim of the kind of jurisdiction that is asserted by the tribe and the tribal court in this case.

■ It is further urged that there is no showing of irreparable harm and that this case is not a proper one for injunctive relief. Any course of conduct on the part of the Blackfeet Tribe or the tribal court which would make the investigation and prosecution of a federal crime on the reservation subject to the delays of hearings before the tribal court does cause irreparable harm. Any

delay in the resolution of a criminal case tends to impair the whole of the process of criminal justice. It is the kind of damage which is not readily measured but which in my opinion not only justifies but requires injunctive relief.

■ It is the judgment of the court that the act of the Blackfeet Tribal Business Council in legalizing the possession of mechanical gambling devices on the Blackfeet Reservation was in excess of its powers and that the acts of the tribal court in restraining the removal of the seized devices and in citing the United States Attorney for contempt were in excess of its powers.

■ I have sympathy for the judges of the tribal court. I understand the pressures that can be generated by political urgings for the exercise of tribal sovereignty. Unfortunately the word "sovereignty" is politically used without regard to the fact that as applied to Indian tribes "sovereign" means no more than "within the will of Congress." I am aware of the complex problems of jurisdiction which plague tribal courts. Believing that what was done here was done in an area of law surrounded by uncertainty and that neither the tribe nor the tribal courts would, aware of the limitations on their power, exceed it, I do not at this time grant injunctive relief. *Cf.* Roe v. Wade, 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

If either party deems that a further order should be made, either by reason of the necessities of the case or for the purpose of securing an order from which an immediate appeal may be taken, counsel should promptly advise the court.

4. *See* C. H. Wright, Federal Courts, at 53, (2d ed. 1970).