See also, D.C., 368 F.Supp. 1245, D.C., 374 F.Supp. 321, D.C., 383 F.Supp. 389.

**UNITED STATES of America,
Plaintiff,**

v.

**Dennis BANKS, Defendant.**

**UNITED STATES of America,
Plaintiff,**

v.

**Russell MEANS, Defendant.**

Nos. CR73–5034, CR73–5062, CR73–5035
and CR73–5063.

United States District Court,
D. South Dakota, W. D.

Aug. 20, 1974.

William F. Clayton, U. S. Dist. Atty., D. S. D., and R. D. Hurd and David R. Gienapp, Asst. U. S. Attys., Sioux Falls, S. D., and Earl Kaplan, Dept. of Justice, Washington, D. C., for plaintiff.

Mark Lane, St. Paul, Minn., Douglas Hall and Larry B. Leventhal, Minneapolis, Minn., for defendant Banks.

William M. Kunstler, New York City, and Kenneth E. Tilsen, St. Paul, Minn., for defendant Means.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

In this case arising from events which took place at Wounded Knee, South Dakota, during the 71 day period from February 27, 1973, to May 8, 1973, at the close of the government's case, the defendants Means and Banks have moved for judgment of acquittal as to all eight counts of indictments 73–5034–5 and the two counts of indictments 73–5062–3. This trial is a consolidation of two of the Wounded Knee Occupation leadership cases. The two defendants, Means and Banks, were identically charged in the first two indictments, as follows: Count I, with burglary of the Wounded Knee Trading Post; Count II, with larceny of certain contents of the Trading Post; Count III, with assault on Joanne Pierce, a Special Agent of the Federal Bureau of Investigation; Count IV, with preparation and location of bunkers and trenches at Wounded Knee, which obstructed, impeded or interfered with law enforcement officers; Count V, with the placement of a road block, manned by persons armed with guns, on a road leading into Wounded Knee, which obstructed, impeded, or interfered with law enforcement officers; Count VI has pre-viously been dismissed by this Court; Count VII, with possession of unregistered firearms (molotov cocktails); Count VIII, with theft of an automobile; Count IX, with a conspiracy to commit criminal acts including the previous substantive Counts. Subsequent to the return of the two indictments just summarized, two additional indictments, CR73–5062 and CR73–5063, charged Banks and Means respectively under Count I (hereinafter for convenience referred to as Count X) with assaulting Curtis Fitzgerald, a Special Agent of the Federal Bureau of Investigation; Count II (hereinafter for convenience referred to as Count XI) alleged an assault on Lloyd Grimm, United States Marshal for the District of Nebraska.

Briefs on motion for judgment of acquittal as to all ten counts were filed with this Court by the moving party and by the government. Oral argument on the motion was conducted on August 7, 1974. At the conclusion of the argument, the motion for judgment of acquittal was granted as to Counts I, VII and VIII. The motion was denied as to Counts II and IX. Judgment was reserved by this Court as to Counts II, IV, V, X and XI, pending an evidentiary hearing on the question of the alleged illegality of the government's law enforcement efforts at Wounded Knee during the occupation. That hearing commenced on August 7, 1974, and was completed on August 9, 1974. In addition to the evidence introduced by way of testimony and exhibit at that hearing, portions of the transcript from a trial conducted by Judge Warren Urbom in Lincoln, Nebraska, in· connection with another case arising out of the Wounded Knee Occupation, were admitted in evidence by way of stipulation. At the conclusion of the evidentiary hearing, this Court granted the motion for judgment of acquittal as to Counts IV and V, and denied the motion as to Counts II, X and XI. The Court reserved the right to file a written opinion.

In the pages that follow, consideration will be directed first to certain conten-

tions raised by the defendants in the motion for judgment of acquittal which relate to all of the Counts. Succeeding parts of this Memorandum Decision will deal with the specific Counts.

## PART I

### A. The Sioux Treaty of 1868

The defendants in their motion and brief assert that this Court lacks jurisdiction under the Sioux Treaty of 1868, 15 Stat. 635. This claim is applied to all of the Counts. The crux of the defendants' argument is based in the first instance on Article I of the Treaty, which provides that the Indians will, "upon proof made to the agent . . .," deliver-up to the United States, Indians accused of violating the laws of the United States.

The Oglala Sioux Tribal Code, Chapter I, Section I, in essence provides that the Tribal Court "shall have jurisdiction over all offenses when committed by a member of the Tribe, and non-member Indians . . . ." Further, the defendants argue that Chapter I, Section 1.1, Part 1, of the Tribal Code establishes the Tribal Court as the "agent" referred to in Article I of the Treaty. The defense then asserts that as there is no record of proof having been made to the Tribal Court as to these defendants, the United States lacks jurisdiction.

■ This Court is unable to accept the analysis suggested by the defense. Congress has, since 1868, enacted statutes which have either amended or abrogated the terms of the Sioux Treaty. *See, e. g.,* The Major Crimes Act, 18 U.S.C. Sec. 1153. That Congress has the power to so amend or abrogate the Treaties made with the Indians is established. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912).

> The Tribes have been regarded as dependent nations, and treaties with them have been looked upon not as contracts, but as public laws which could be abrogated at the will of the United States. *Choate, supra,* at 670–671, 32 S.Ct. at 567.

*See also* United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1868). The following language from United States v. Blackfeet Tribe, 364 F.Supp. 192 (D.Mont.1973), is instructive:

> The defendants urge that the Blackfeet Tribe is sovereign and that the jurisdiction of the tribal court flows directly from that sovereignty. . . . The blunt fact, however, is that an Indian tribe is sovereign to the extent that the United States permits it to be sovereign—neither more nor less. While for many years the United States recognized some elements of sovereignty in the Indian tribes and dealt with them by treaty, Congress by Act of March 3, 1871 (16 Stat. 566, 25 U.S.C. § 71) prohibited the further recognition of Indian tribes as independent nations. Thereafter the Indians and the Indian tribes were regulated by acts of Congress. The power of Congress to govern by statute rather than treaty has been sustained. *Blackfeet, supra,* at 194 (citations omitted).

■ It is clear to this Court that Congress intended, in enacting the Major Crimes Act, 18 U.S.C. Sec. 1153, for this Court to have jurisdiction of those Counts based on that statute. Those Counts based on statutes other than the Major Crimes Act have previously been the subject of a motion to dismiss on jurisdictional grounds. This Court in its Memorandum Decision decided at that time that jurisdiction existed, and accordingly denied the motion.

■ The motion for judgment of acquittal as to all Counts on the grounds of lack of jurisdiction under the Sioux Treaty of 1868 is denied.

### B. Discriminatory Prosecution and Bad Faith Prosecution

■ The Court adheres to its formal ruling in United States v. Banks, 368 F.Supp. 1245 (D.S.D.1973). Evidence presented since the decision in *Banks, supra,* fails to persuade this Court that a reasonable doubt exists as to the pros-

ecutor's purpose. The motion for judgment of acquittal as to all the Counts, on the grounds of discriminatory prosecution and bad faith prosecution is hereby denied.

## PART II

### COUNT IX—CONSPIRACY

■■ Count IX charged the defendants with entering and engaging in a criminal conspiracy, in violation of 18 U.S.C. Sec. 371. The defendants, by their motion for judgment of acquittal and supporting brief and argument, have contended vigorously that the evidence as to Count IX is insufficient to justify submission of the Count to the jury. Their argument focuses primarily on the lack of any *direct* evidence of an agreement. It is of course elementary that for there to be a conspiracy, there must be an agreement among the coconspirators. The agreement need not be express or formal. United States v. Hutchinson, 488 F.2d 484 (8th Cir. 1973). It is equally elementary that the offense of criminal conspiracy requires the commission of at least one overt act, by one of the coconspirators, in furtherance of the conspiracy. United States v. Skillman, 442 F.2d 542 (8th Cir.), cert. den. 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

■ The defendants are perhaps correct when they state in their brief that there is no direct evidence of the existence of an agreement among the coconspirators. However, the law in this circuit is clear. No direct evidence need be produced to support the submission of a conspiracy charge to a jury. "The agreement . . . may be established by circumstantial evidence." *Hutchinson, supra,* 488 F.2d at 490. In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the United States Supreme Court stated that, "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and colloca-

tion of circumstances.' " *Glasser, supra,* at 80, 62 S.Ct. at 469.

■ The record in this case is replete with testimony from which the existence of an agreement may be inferred. The jury could well find beyond a reasonable doubt that the events surrounding the occupation of Wounded Knee constituted a "development and collocation of circumstances" evidencing the existence of a criminal conspiracy. This Court finds that there is sufficient evidence to submit Count IX to the jury, and therefore the motion for judgment of acquittal as to Count IX is denied.

## PART III

### COUNT I—BURGLARY OF THE TRADING POST

### COUNT II—LARCENY OF THE TRADING POST

Count I alleged that the defendants, on or about February 27, 1973, broke and entered the Wounded Knee Trading Post, with intent to commit a larceny, in violation of 18 U.S.C. Sec. 1153 and S.D.C.L. Sec. 22–32–9.

The starting point in an analysis of this Count is 18 U.S.C. Sec. 1153, the Major Crimes Act. That statute vests jurisdiction in the federal courts over certain offenses committed by Indians, within Indian Country. Burglary is one of the enumerated offenses. The statute also specifies, in the case of burglary, that the offense shall be defined and punished in accordance with the laws of the state within which the offense occurred. That state, of course, is South Dakota. This Court's reading of 18 U.S.C. Sec. 1153 compels the conclusion that the offense charged in Count I of the indictment must be measured against South Dakota law as it pertains to burglary.

■ S.D.C.L. Sec. 22–32–9 provides in substance that anyone who breaks and enters any building in which property is kept, *"with intent to commit larceny or any felony,"* (emphasis added), is guilty of burglary in the third degree.

The indictment charged the defendants with the specific intent of "intent to commit a larceny", but omitted the statutory language from 22–32–9, "or any felony." It necessarily follows that for Count I to stand, the evidence must support a finding of "intent to commit a larceny," on the part of the defendants at the time of the alleged breaking and entering. The definition of larceny in South Dakota law provides, therefore, the key to the fate of Count I. S.D.C.L. Sec. 22–37–1 defines larceny as "the taking of personal property *accomplished by fraud or stealth* and with intent to deprive another thereof." (emphasis added). The government does *not suggest that any fraud was involved* in this case. It follows that in order for Count I to stand it must appear from the evidence that the defendants sought to commit the larceny by stealth. Any commonly accepted definition of the word "stealth," as it is used here, would most certainly contain the element of secrecy or furtiveness. The most recent South Dakota Supreme Court case dealing with larceny makes it clear that under South Dakota law, stealth and secrecy are in fact considered to be synonymous. *See* State v. Aschemeller, 209 N. W.2d 369 (S.D.1973).

 In this Court's opinion, the evidence fails to support a finding of stealth. The breaking and entering of the Trading Post was prefaced by the arrival of a caravan of some thirty or more cars, containing at least 100 persons. Upon arriving at Wounded Knee the members of the caravan apparently proceeded to shoot out the street lights, and generally cause a commotion. There is no evidence of an attempt on the part of the participants to conceal their conduct in Wounded Knee on the evening of February 27, 1973. This Court finds, therefore, that the requisite "stealth" *for a conviction under Count I is wholly* lacking, and judgment of acquittal is therefore granted as to Count I.

 Count II stands on a different footing. That Count alleges that the defendants unlawfully took and carried away with intent to steal and purloin, certain contents from the Wounded Knee Trading Post, of a value in excess of $100, in violation of 18 U.S.C. Secs. 1153 and 661. The statute which defines the crime at issue in Count II does not require stealth, as did the South Dakota statute in Count I. 18 U.S.C. Sec. 661 states that "(w)hoever . . . takes and carries away, with intent to steal and purloin, any personal property of another . . ." will be subject to the penalties provided in the statute. The Court finds that the evidence presented is sufficient for a reasonable jury to conclude beyond a reasonable doubt that the defendants committed the acts alleged in Count II. The motion for judgment of acquittal as to Count II is therefore denied.

## PART IV

### COUNT VII—POSSESSION OF UN-REGISTERED FIREARMS/MOLO-TOV COCKTAILS

### COUNT VIII—AUTOMOBILE THEFT

 Count VII alleged in substance that the defendants willfully, knowingly and unlawfully possessed firearms which had not been registered as required by law. The "firearms" at issue here are so-called molotov cocktails which were found in the locked trunk of a vehicle occupied by four persons, but not the defendants. This Court decided previously that molotov cocktails are firearms *within the meaning of 26 U.S.C.* Sec. 5861(d). United States v. Banks, 368 F.Supp. 1245, 1250 (D.S.D.1973). The issue now before this Court is whether there is sufficient evidence in the record to submit the question of the defendants' guilt on Count VII to the jury. This Court finds that there is not sufficient evidence, and therefore the motion for judgment of acquittal is granted as to Count VII. There is no evidence that the fingerprints of either Dennis Banks or Russell Means were found on the molotov cocktails. There is no evidence which establishes that

the four individuals who were in the car involved at the time the molotov cocktails were discovered even had access to the trunk in which they were found. The evidence indicates that those four individuals did not have the key to the trunk, in that the law enforcement authorities found it necessary to pry open the trunk with some kind of a crow bar or tire iron. Further, there is no evidence which shows that the four occupants of the car were coconspirators, thus defeating the possibility of imposing liability upon the defendants on that basis. There is insufficient evidence in the record to permit a reasonable jury to find, beyond a reasonable doubt, the defendants guilty as to Count VII. The motion for judgment of acquittal is granted as to Count VII.

In Count VIII the defendants are charged with the theft of an automobile, in violation of 18 U.S.C. Secs. 1153 and 661. One of the elements of the offense charged is that the item stolen must be of a value of more than $100. 18 U.S.C. Sec. 661. The only evidence which in any way bears on the question of the value of the car is to the effect that it was a 1970 Dodge, and that it was in running condition. There was no testimony as to the original cost of the car, nor was there testimony as to the car's value at the time of the alleged theft. It would be impermissible to allow the jury in this case to infer, on the basis of this record, that the value of the car on the date in question exceeded $100. *Cf.* United States v. Bryant, 454 F.2d 248 (4th Cir. 1972); United States v. Quinn, 467 F.2d 624 (8th Cir. 1972), cert. den. 410 U.S. 935, 93 S.Ct. 1390, 35 L.Ed.2d 599. Anyone familiar with reservation conditions knows full well that a fairly new car, even if in running condition, might not be worth $100. The jury cannot be permitted to speculate as to an element of a criminal offense. The motion for judgment of acquittal as to Count VIII is granted.

## PART V

### COUNTS IV & V—INTERFERING WITH LAW OFFICERS
### COUNTS III, X & XI—ASSAULTS

Both Count IV and Count V alleged the commission of certain acts, with the requisite criminal intent, to obstruct, impede and interfere with United States Marshals and agents of the Federal Bureau of Investigation, in violation of 18 U.S.C. Sec. 231(a)(3). The indictment alleges that the federal officers just referred to "were then engaged in the lawful performance of their official duties . . ." at the time of the commission of the alleged illegal acts. It should be noted that the actual statutory language of 231(a)(3) requires that the law enforcement officers involved be "lawfully engaged", and not merely engaged. Notwithstanding the wording of the indictment, it is clear that one of the elements of the offenses charged under Counts IV and V is that the Marshals and the F.B.I. agents must have been lawfully engaged in the lawful performance of their official duties.

The motion for judgment of acquittal raised the point that the federal officers at Wounded Knee were not lawfully engaged in the lawful performance of their duties, in that they were acting in violation of 18 U.S.C. Sec. 1385. That statute provides as follows:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as *a posse comitatus or otherwise* to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both. (Emphasis added).

Of course, prima facie lawfulness of the activities of the federal civil authorities at Wounded Knee is established by statute. *E. g.,* 18 U.S.C. Secs. 3052, 3053; 28 U.S.C. Sec. 570; S.D.C.L. Sec. 7–12–1. The cited statutes unquestionably gave the Marshals and the F.B.I. agents the authority to undertake the

law enforcement activities which occurred at Wounded Knee. On the other hand, the statutes do not reach the issue raised with regard to 18 U.S.C. Sec. 1385.

Following the submission of briefs on the motion for judgment of acquittal, and argument, this Court indicated its ruling on the motion as to certain Counts, and reserved ruling as to certain other Counts. Among those as to which ruling was reserved were Counts IV and V, which are the ones now under discussion. Evidence was then heard, outside the presence of the jury, as to the alleged violation of 18 U.S.C. Sec. 1385. Following the presentation of evidence by the defense, the government indicated, in response to specific inquiry by the Court, that it had no witnesses to offer. It should also be noted that the government at no time expressed a desire to reopen its case in chief for the purpose of placing in evidence testimony or exhibits tending to establish that the federal officers were lawfully engaged in the lawful performance of their official duties. Immediately following the evidentiary hearing on the military involvement question on August 9, 1974, this Court granted the motion as to Counts IV and V. In reaching that decision, this Court indicated that the evidence presented in the evidentiary hearing supported a finding that the federal officers at Wounded Knee had used part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws, thereby precluding the establishment of one of the elements of the offenses charged.

It would serve no useful purpose to relate in detail the evidence presented to this Court in the hearing. A summary of the salient evidence establishes that large amounts of military equipment, including ammunition, weapons, flares, armored personnel carriers, and clothing, were either loaned or sold to the Department of Justice by the Department of Defense in connection with the Wounded Knee operation. The evidence also shows that certain members of the Army were present on the Pine Ridge Reservation in the vicinity of Wounded Knee. Colonel Volney Warner, then Chief of Staff of the 82nd Airborne, Fort Bragg, arrived in the area on February 3, 1973. Colonel Warner's primary function, at least initially, was to observe the situation and to advise his superiors as to the need for Army troop intervention. It is also clear that on a day-to-day basis Colonel Warner gave advice and guidance to the federal civil officials in charge of the Wounded Knee operation. Representatives of the Marshals Service and the F.B.I. actively sought Colonel Warner's advice, and he gave it. The first instance of such advice occurred, it appears from the evidence, within hours, if not minutes, of Colonel Warner's arrival at Ellsworth Air Force Base, near Rapid City, South Dakota, in the early morning hours of February 3, 1973. At that time Colonel Warner advocated that the then existing shoot-to-kill policy of the federal law enforcement personnel be amended to a shoot-to-wound policy. In short, Colonel Warner counseled the adoption of the Army's blueprint for handling a civil disorder, which was referred to in the testimony as the "Garden Plot" plan. He also advocated a policy of avoiding exchanges of gunfire, and avoiding any action which might provoke hostilities. When law enforcement officers requested armored personnel carriers, Colonel Warner recommended to his superiors that the request be approved only after obtaining assurances from the requesting officers that the carriers would be used solely for defensive purposes.

The evidence also shows that Colonel Jack C. Potter, Deputy Chief of Staff of Logistics of the 6th United States Army, was ordered to the Pine Ridge Reservation. His primary function was in the area of logistics and supplies. There is also evidence that National Guard mechanics were utilized to repair the armored personnel carriers, as need arose. With regard to the personnel carriers, the evidence indicates that the first two such vehicles arrived at Pine Ridge in the early morning hours of February 28,

**376**

1973, just hours after the beginning of the occupation. (TR 7470). There are also at least two documents in evidence which indicate the same thing. It is clear, therefore, that the military involvement at Wounded Knee began almost immediately. In addition, the Nebraska National Guard was utilized to make at least one aerial reconnaissance of the Wounded Knee area, at the request of the F.B.I. and the Marshals Service.

The government has contended that the sale and loan of equipment to the Department of Justice is authorized by the Economy Act, 31 U.S.C. Sec. 686, and by 32 C.F.R. Sec. 501.7. This Court is not convinced of the applicability of the Economy Act provisions to transactions of the kind that occurred in this case. Be that as it may, it is nonetheless clear that the Economy Act applies only to sales, and not to loans. 32 C.F.R. Sec. 501.7 does not, in this Court's opinion, serve to provide legal basis for the loans of equipment involved in this case. The section of the regulations just cited is promulgated under 10 U.S.C. Secs. 331, 332, 333, which deal with the issuance of a Presidential Proclamation as the basis for federal troop intervention in civil law enforcement. There was no Presidential Proclamation in this case. 32 C.F.R. Sec. 501.7 is therefore inapplicable on that basis. Even if the section did apply, either because there was a Presidential Proclamation, or otherwise, it does not appear that the strict terms of the regulation were met in this case. Specifically, the regulation requires that a loan agreement be entered into in every instance, and in this case there is no evidence of any such agreement.

A study of Colonel Warner's testimony, and the testimony of other witnesses, and the documentary evidence, balanced against the presumption of lawfulness that rightly attaches to the statutorily authorized activities of law enforcement personnel, compels this Court to conclude that there is insufficient evidence of the lawfulness of the government activity at Wounded Knee, to justify submission of Counts IV and V to the jury.

Comment should be directed at this point to one item. At that point in the proceedings immediately following the argument on the motion for judgment of acquittal, this Court indicated its ruling as to certain Counts and reserved ruling as to others. Ruling was reserved for the purpose of conducting the evidentiary hearing referred to previously. The government inquired whether the rulings were reserved only because of the issue raised with regard to military involvement. A reading of the transcript suggests that this Court viewed the posse comitatus matter as possibly not relating to the sufficiency of the evidence. (TR 18,202) However, since "lawful engagement" is an integral element of the offenses charged in Counts IV and V, and since posse comitatus relates to the issue of "lawful engagement", it is clear that the posse comitatus matter was, and is, inextricably intertwined in the question of the sufficiency of the evidence, and this Court has treated it as such.

This Court feels that an impression that may have been conveyed by the Court at the time I originally indicated my ruling on Counts IV and V should be corrected. This Court did not intend to suggest, and does not in this opinion mean to suggest, that this Court is of the view that any federal officials, law enforcement personnel or military personnel, were engaged in criminal conduct in connection with the events at Wounded Knee. The purpose of a motion for judgment of acquittal is not to try the guilt or innocence of anyone, and certainly not of persons not defendants in the instant case. The Court's function in this posture is to measure the evidence presented in the trial against the standard enunciated in Rule 29 of the Federal Rules of Criminal Procedure. It is the opinion of this Court only that reasonable jurors could not find beyond a reasonable doubt that the Marshals and the F.B.I. agents were "lawfully engaged in the lawful performance of their official duties."

Judge Warren Urbom, in the case of United States v. Jaramillo (D.Neb.), decided August 14, 1974, 380 F.Supp. 1375, entered a judgment of acquittal in a situation very much like that before this Court. Judge Urbom, in his Memorandum Decision in *Jaramillo* and in a companion case, found that the use of military personnel did fall within the ambit of the prohibition of 18 U.S.C. Sec. 1385. *See also* United States v. Walden, 490 F.2d 372 (4th Cir. 1974); Wrynn v. United States, 200 F.Supp. 457 (E.D. N.Y.1961). Judge Urbom in *Jaramillo* as the trier of fact in that case found specifically that the government had failed to meet its burden of proof with regard to the element of "lawful engagement", as required by 18 U.S.C. Sec. 231 (a)(3). This Court has gone one step farther than did Judge Urbom, in that this Court has found that there is insufficient evidence on the issue of "lawful engagement" to justify submission of that issue, and therefore Counts IV and V, to the jury.

■ After this Court's ruling from the Bench as to Counts IV and V, the government filed a "Motion to Reconsider" with regard to those Counts. I indicated that I would take the motion under advisement, and asked that briefs be submitted on the issues raised by the motion no later than August 19, 1974. I have now received those briefs. It is the opinion of this Court that it would be inappropriate to reconsider my decision on Counts IV and V. The motion as granted was denominated one of acquittal, and was based on the facts as presented to and perceived by this Court. To reconsider my decision, it once having been announced in open court, though not in the presence of the jury, and after the defense has now rested its case, would be to raise the specter of a serious encroachment upon the Fifth Amendment's bar against double jeopardy. That this Court will not do. It is also the view of this Court that if an error is to be made in the trial of a criminal case, it is far better that the error fall in favor of the accused, rather than to his detriment.

Justice Harlan, in United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L. Ed.2d 608 (1970), stated that, "no appeal (may) be taken by the Government from an acquittal no matter how erroneous the legal theory underlying the decision." *Sisson, supra,* at 299, 90 S.Ct. at 2134. For these reasons, this Court does not intend to consider further the government's motion to reconsider.

■ The defense has asserted that the "posse comitatus" defense just discussed also applies to the three assault counts, namely, Counts III, X and XI. The Court disagrees with the defense. The assault indictments are brought under 18 U.S.C. Sec. 111 and 18 U.S.C. Sec. 1114. Section 111 makes criminal an assault upon any of the persons designated in section 1114, while those persons are engaged in the performance of their official duties. United States Marshals and F.B.I. agents fall within the ambit of section 1114, and as indicated in section A of this part, there is no doubt but that the federal law enforcement personnel at Wounded Knee were engaged in the performance of their statutory duties. *See also* 28 U.S.C. Sec. 535; 28 U.S.C. Sec. 569. The posse comitatus defense is inapplicable to the assault counts because, unlike 18 U.S.C. Sec. 231(a)(3), there is no requirement under 18 U.S.C. Sec. 111 that the person assaulted be "lawfully engaged in the lawful performance" of his official duties.

■ A review of the evidence presented by the government in its case in chief leads this Court to conclude that, taking the evidence most favorable to the government, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *See, e. g.,* United States v. McCall, 148 U.S.App.D.C. 444, 460 F.2d 952 (1972). The motion for judgment of acquittal as to Counts III, X and XI is denied.

CONCLUSION

To summarize, this Court has granted the motion for judgment of acquittal as to Counts I, IV, V, VII and VIII of in-

378

dictments CR73–5034 and CR73–5035. This Court has denied the motion for judgment of acquittal as to Counts II, III and IX of indictments CR73–5034 and CR73–5035, and has denied similar motions for judgment of acquittal as to Counts X and XI (Counts I and II of indictments CR73–5062 and CR73–5063.)