# REPORT OF CASES

## DETERMINED IN THE

# SUPREME COURT

## OF THE STATE OF NEW MEXICO

## JANUARY TERM, 1921

[No. 2326.   Sept. 2, 1920.]

## STATE v. MARTINO.

### SYLLABUS BY THE COURT.

1.   Objection to the indictment, which was in all respects regular in form, to charge defendant as a principal in the second degree according to the outward form, rather than the legal effect, of his acts, **held** to be properly overruled.   P. 3

2.   Evidence examined, and **held** to justify the overruling of a motion for a directed verdict of acquittal.   P. 4

3.   Where homicide is committed while the doors of a dwelling are being broken by defendant and his companion, evidence of such breaking is admissible as a part of the res gestæ.   P. 5

4.   Evidence examined, and **held** to justify the court's refusal to take from the jury the consideration of the question of the guilt of the defendant of murder in the first and second degrees, and to confine them to manslaughter.   P. 5

5.   A principal in the second degree is guilty of the crime the same as the principal in the first degree, and may be tried and convicted, even although the latter has been acquitted or convicted of a lesser degree of the offense.   P. 6

6.   Instructions requested are properly refused, when the court has covered the same ground by other proper instructions.   P. 6

7.   The appellant was charged in the indictment with murder as a principal in the second degree.   The principal in the first degree, who did the shooting, testified for the prosecution.   On cross-examination he was asked the following questions: "Why did you shoot Joe Laval that night?" "Did you

and Dominic Martino go to the kitchen that night when you went there for the purpose of assaulting or shooting Joe Laval?" It is **held** that the court committed error in sustaining objection to these questions upon the theory that answers to the same tended to characterize the grade or quality of the act, of which the appellant was entitled to avail himself. P 6

8. The rule, requiring counsel to explain to the court the kind and character of the evidence sought to be elicited from a witness in order to preserve a question for review in this court, has no application, where the witness is upon cross-examination, and where the question itself is self-explanatory of the character of evidence sought to be elicited.    P. 8

Appeal from District Court, Colfax County; Lieb, Judge.

Dominic Martino was convicted of murder in the second degree, and he appeals. Reversed, and cause remanded, with directions to award a new trial.

J. Leahy, of Raton, for appellant.

N. Meyer, Assistant Attorney General, for the State.

### OPINION OF THE COURT.

PARKER, C. J. The appellant was tried and convicted of murder in the second degree, and sentenced to a term in the penitentiary, from which judgment this appeal is taken. He was charged as a principal in the second degree; that is to say, one Joseph Savant was charged with murder in the first degree in regular form, and the appellant was charged as being present, aiding, abetting, and assisting said Savant in the commission of the murder.

The facts appearing from the record are as follows: On the night of the homicide appellant and the said Savant had been down town, and returned about half past 10 o'clock to the home of the deceased, with whom they boarded. They were intoxicated, and made a great deal of noise around the house. Appellant knocked at the kitchen door of the deceased's house, and asked for liquor, which request was refused by the deceased, he telling appellant to go to bed. Appellant then went to his

State v. Martino, 27 N. M. 1.

bunk room, and took something out of his trunk, saying, "I am going to show you that I can make you open the door." "I will show you if you are the boss of me; I will see which is the boss." Returning to the yard near the kitchen door, the appellant engaged in bad language toward the deceased, and the appellant and Savant broke in the kitchen door. Appellant then called to the deceased, and invited him to come outside, and threatened him, and said that he would "fix him." The deceased then entered the kitchen from an adjoining bedroom, and the shooting began. At this time deceased had no gun, and he returned to his bedroom and procured a shotgun. When he returned to the kitchen another shot was fired, and he immediately returned the fire. All of the shooting, so far as appears from the evidence, was done by the defendant, Savant, and the appellant did no shooting. Upon firing the last shot by Savant the deceased fell, and thereupon the appellant entered the kitchen and jumped upon the deceased, and struck him on the neck with a pistol which he had, but which, so far as appears from the record, he did not fire. As he was striking the deceased, the appellant said, "There, I am better than you are, and will make your brains jump." The shot which the deceased fired from his shotgun took effect upon Savant, and he soon became unconscious from the effects of the wound although he afterwards recovered and testified as a witness in the case.

It will thus be seen that the actual killing was done by the defendant, Savant, and that the appellant was present, aiding, abetting, and assisting Savant in the commission of the crime, and he was so charged in the indictment.

[1] A motion was made to quash the indictment, which motion was overruled. The motion was based, as near as we can determine, upon the following grounds: (1) That no conspiracy is alleged; (2) that the allegation of aiding, abetting, and

assisting is a mere conclusion of law; (3) that the indictment does not charge that the appellant instigated the killing; (4) that it is not alleged that the appellant induced, counseled, or suggested the killing, or co-operated with Savant to take the life of the deceased; (5) that the indictment does not allege that appellant was aware of the intent on the part of Savant to shoot and kill; and (6) that the indictment does not allege that intent to take life was in the minds of both Savant and the appellant.

A sufficient answer to all of these objections is to be found in 1 Bishop's new Cr. Law, § 648; 2 Bishop's New Cr. Proc. § 3; 1 Bishop's New Cr. Proc. § 332, and Bishop's Directions and Forms, §§ 113-115, and it will be unnecessary to cite our own or other cases. The indictment was in all respects regular in form.

[2] At the close of the evidence for the state, appellant moved for a directed verdict of acquittal upon the grounds that (1) There was no sufficient evidence touching the aiding, abetting, or assisting by appellant; (2) the evidence for the state showed that appellant did not aid, abet, or assist in the commission of the crime; (3) there is no evidence that appellant and Savant entered the home of the deceased with the intent to take his life; (4) the indictment does not allege that the homicide was committed while appellant and Savant were engaged in the commission of a felony; (5) the indictment does not charge any conspiracy between defendant and Savant, and because the evidence shows that Savant shot and killed deceased, acting upon his own resolution and without any agreement with appellant; and (7) there was no sufficient evidence before the jury touching the crime charged.

The fourth, and the first clause of the fifth, ground of the motion repeat objections to the indictment theretofore made in the motion to quash, and need not be again considered. The grounds of the motion

(1), (2), (3)', (4), (7), and the latter clause of (5), go to the question of the sufficiency of the evidence to support a verdict. The brief outline of the evidence given above clearly shows that appellant was the chief actor in the fatal encounter. He seems to have done all the talking and threatening, he assisted in breaking down the door, and, as soon as the deceased fell, jumped upon him and beat him with a pistol. After they had broken open the door, appellant invited deceased out and threatened to "fix" him. It is clear that appellant participated in the common design to overcome and subdue deceased and to go as far as to kill him if necessary. The court, in overruling the motion for a directed verdict, so properly held.

[3] After the motion for a directed verdict was overruled, appellant moved to take from the jury the evidence touching the breaking of the door upon the ground that it was done to obtain liquor,·and not done in order to assault and kill the deceased, and because the indictment did not charge the homicide as having been committed while the defendants were engaged in the commission of a felony. The facts show that the breaking ·was a part of the res gestæ, and were properly before the jury for such inferences as they might properly draw therefrom. This motion was therefore necessarily overruled.

[4] Thereupon appellant moved to take from the jury the consideration of the guilt of appellant of murder in the first and second degrees and confine them to manslaughter. Just why this motion was made is not clear from the brief. There is an intimation that it was made upon the ground that the indictment did not charge homicide as committed while in the commission of another felony, and that therefore, under the facts, there could be no murder in the first or second degree. We fail to follow the argument. As before seen, the breaking in of the door was a part of res gestæ, and the evidence was

introduced, not to show a particular grade of crime, but merely to describe the circumstances under which the crime was committed. The court was therefore correct in denying the motion.

[5]    Appellant argues that he could not be tried and convicted until after the conviction of Savant, the principal in the first degree. A misconception of the principles governing these matters is here disclosed. The doctrine invoked applies only to accessories before or after the fact, and has no application to principals in second degree, or as sometimes styled, accessories at the fact. The principal in the second degree is guilty of the crime the same as the principal in the first degree, and may be convicted although the latter be acquitted, or convicted of a lesser grade of the crime. Bishop's New Cr. Law, § 648; 2 Bishop's New Cr. Proc. § 3; 1 R. C. L. Accessories, § 19; Territory v. McGinnis, 10 N. M. 275, 61 Pac. 208; State v. Jarrel, 141 N. C. 722, 53 S. E. 127, 8 Ann. Cas. 438, and note.

[6]    The appellant complains of the refusal of the court to give certain instructions requested by him. The subject-matter of the requested instructions was fully covered by instructions given by the court of its own motion. The appellant, therefore, cannot complain here of the court's action.

[7]    Appellant raises a serious question in regard to the exclusion of testimony offered by him. Savant, the principal in the first degree who did the shooting, testified for the prosecution. On cross-examination by counsel for appellant he was asked the following questions:

"Why did you shoot Joe Laval that night?"

"Did you and Dominic Martino go to the kitchen, this night when you went there, for the purpose of assaulting or shooting Joe Laval?"

"On the night that you testified that Joe Laval was shot and killed, did the defendant, Dominic Martino, know that you had a pistol, and before you fired the shot out near the fence?"

The court sustained the objection to each of these questions, and the witness was not allowed to answer. As to the last question above quoted, the appellant cannot complain of the action of the court, for the reason that the witness was afterwards permitted to testify that he did not believe that appellant knew that he had a pistol because he had not told him.

As to the first two questions, above quoted, a serious question is presented. The questions went to the very essence of the transaction which resulted in the death of Laval. While it is true that a principal in the second degree is guilty of a substantive, independent offense, and may be convicted of even a higher degree of homicide than the principal in the first degree may have been convicted, or may be convicted even if the principal in the first degree has been acquitted, it nevertheless remains true that the principal in the second degree, like any other defendant, is always entitled to show the real nature and character of the crime. In the case under consideration the appellant was entitled to show, if he could, that the deceased was killed by the witness Savant in lawful self-defense, and if the jury should be convinced of that fact he would be entitled to an acquittal. The evident object of the first question above quoted was to show by the witness that he never shot at the deceased or attempted in any way to harm him, until after the deceased had shot the witness in the face with a shotgun, and that he did the shooting, as he believed, in order to protect himself from death or great bodily harm. An examination of the testimony of the witness shows that this was his attitude towards deceased. All of the shooting which he had done prior to the fatal shot was done evidently for the purpose of intimidating the deceased and inducing him to give him and the appellant liquor, and was not done with intent to harm the deceased. It is clear, therefore, that the

exclusion of the evidence called for by the question was harmful to the appellant, and, there being no legal objection to the evidence, it was error to exclude the same.

[8] The Attorney General seeks to justify the action of the court in excluding this testimony upon the principle that, where an objection is sustained to a question, it is necessary, in order to preserve the question for review by this court, for counsel to explain to the court the kind and character of the evidence sought to be elicited from the witness. He cites 2 Elliott on Ev. § 886; and Palatine Ins. Co. v. Santa Fé Mercantile Co., 13 N. M. 241, 82 Pac. 363. The doctrine there announced is correct, but it has no application to the circumstances in this case.

It is to be noted in this connection that the question first above quoted requires no explanation to the court; it being self-explanatory. No answer which the witness could make to the question would be irrelevant or immaterial. Any answer he might make to the question would tend to characterize the nature and quality of his act in shooting the deceased. It is further to be noted that this witness was asked this question upon cross-examination, and counsel for appellant were not charged with knowledge of what the answer of the witness would be. He was not appellant's witness. Counsel for appellant, therfore, would not be expected to be able to state to the court what the witness would answer. Under such circumstances the rule requiring a statement by counsel, advising the court of the nature of the testimony which the witness would give, has no application. 3 C. J. Appeal and Error, §§ 736, 737.

It follows that the judgment should be reversed for the error of the court in excluding the testimony mentioned, and the cause should be remanded to the district court, with directions to award a new trial; and it is so ordered.

ROBERTS and RAYNOLDS, JJ., concur.