UNITED STATES of America

v.

James E. McCALL, Appellant.

UNITED STATES of America

v.

Maurice CEPHAS, Appellant.

Nos. 24496, 24500, 24497, 24501, 71–1349 and 71–1350.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1971.

Decided March 23, 1972.

------◆------

Mr. Meyer Koonin, Washington, D. C. (appointed by this court), for appellant in Nos. 24496 and 24500.

Mr. Patrick J. Mahoney, Washington, D. C., with whom Mr. Sidney Harris, Washington, D. C. (both appointed by this court), was on the brief, for appellant in Nos. 24497, 24501, 71–1349 and 71–1350.

Mr. Charles F. Flynn, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before McGOWAN and TAMM, Circuit Judges, and A. SHERMAN CHRISTENSEN,* U. S. Senior District Judge for the District of Utah.

TAMM, Circuit Judge:

 Appellants,[1] Maurice Cephas and James McCall,[2] charged with, and convicted of, armed robbery,[3] assault

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. James Bonham, a codefendant in the indictments issued against appellants Cephas and McCall, failed to appear for trial. At a separate trial several months later, his motion for judgment of acquittal as to the robbery-related counts was granted,

while his motion was denied as to the possession of the unregistered firearm.

2. Appellant McCall was also charged with, and convicted of carrying a concealed weapon, a knife found on his person at the time of arrest. D.C.Code § 22–3204.

3. D.C.Code §§ 22–2901, 22–3202.

with a dangerous weapon[4] and possession of an unregistered firearm,[5] now challenge the denial of motions for judgment of acquittal alleging that the evidence was insufficient and the instructions of law erroneous.[6] After careful consideration of the record and the arguments advanced by the respective parties, we find no reversible error and accordingly affirm the judgments of the District Court.

## I. Facts

At about 8:30 p. m. on an October evening Mrs. Josephine Jackson was confronted on a neighborhood sidewalk by two young men, one of whom was armed with a pistol. The two wrenched a purse from her arms while striking a blow to her head. Undaunted, Mrs. Jackson rose to observe a vehicle driving from the street to which her assailants fled. She was unable to testify that her assailants entered this or any other vehicle, nor was she able to describe the automobile or its occupants. She did, however, recall that the time was approximately 8:40 p. m.

At trial the man with the gun—allegedly Cephas—was described by Mrs. Jackson as being "brown-skinned, oh, about, I will say, five feet five and was wearing . . . rather light pants, and a lumber jacket," which was also later described as a "light jacket." The second assailant—allegedly McCall —was said to be "nearly six foot some-

thing like that, or you could say five and a half," 150 to 160 pounds, of dark complexion, wearing, "I imagine . . . a dark suit or a dark sweater."

On the night of the robbery, Officer Leavers stopped a speeding vehicle five blocks from the scene of the robbery, issuing appellant McCall a traffic citation for a red light violation, noting thereon that the time of the violation was 8:40 p. m.[7] Although Officer Leavers testified that there were four or five men in the automobile, he could not identify appellant Cephas as one of them.[8] Upon returning to his vehicle, Officer Leavers observed one or two men leaving the automobile.[9] Shortly after the McCall vehicle pulled away from the curb and turned the corner, the officer heard a police radio broadcast concerning the automobile he had just stopped.[10] The car was out of the officer's sight for only a few seconds when it was again stopped by Officer Leavers and several colleagues who arrested the occupants. In addition to driver McCall, appellant Cephas was in the right front passenger seat and a third person, James Bonham, was in the back seat. In the car the officers found Mrs. Jackson's purse on the right rear floor and a loaded-sawed off shotgun under the right front seat, protruding four to six inches onto the right rear floor. Appellant McCall also had a 4-inch blade knife on his person. No pis-

---

4. D.C.Code § 22–502.

5. 26 U.S.C. § 5861(d).

6. Appellant McCall also urges that the trial judge erred in failing *sua sponte* to order a hearing on the validity of the arrest and search of the car. We, however, disagree. In addition to the fact that no objection was asserted at trial, there was clearly probable cause for the arrest and search incident thereto. *See* United States v. Free, 141 U.S.App.D.C. 198, 437 F.2d 631 (1970). In the case at bar Officer Leavers had seen the McCall vehicle speeding from the scene of the crime. When he heard a radio broadcast that the car was wanted in connection with the robbery, he and his fellow officers had ample cause to search the car. *See*

Daniels v. United States, 129 U.S.App. D.C. 250, 393 F.2d 359 (1968). Furthermore, in the instant case the prosecutor turned over the relevant radio transcripts to defense counsel.

7. McCall was not the owner of the vehicle, but testified that he borrowed it on numerous occasions from a friend.

8. Cephas testified that he was arrested on the street while watching a police-citizen confrontation.

9. The individual or individuals alighting from the car were never identified or apprehended.

10. The radio broadcast was the result of a description given to the police by unknown bystanders.

tol was found. According to the testimony of one of the officers, the shotgun was clearly visible from both the passenger and driver's side of the car. With this background we now proceed to a discussion of the relevant issues of law and their application to the instant facts.

## II. *Sufficiency of the Evidence*

▇ In passing upon a motion for judgment of acquittal, the trial judge "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947). "Thus, the test for sufficiency of evidence is not whether a reasonable doubt was possible, but rather whether a finding of *no reasonable doubt* was possible." United States v. Harris, 140 U.S.App.D.C. 270, 284, 435 F.2d 74, 88 (1970) (emphasis in original). The *raison d'etre* of the rule is to prevent the jury from operating beyond its province by engaging in conjecture and speculation. As Judge Prettyman has explained: "Guilt, according to a basic principle in our jurisprudence, must be established beyond a reasonable doubt. And, unless that result is possible on the evidence, the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence." Cooper v. United States, 94 U.S.App.D.C. 343, 346, 218 F.2d 39, 42 (1954). Nevertheless, "[f]requently guilty knowledge is incapable of direct proof and is established, if at all, by circumstantial evi-

dence." Anderson v. United States, 406 F.2d 529, 532 (8th Cir. 1969). In viewing the evidence, however, the judge must "assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom." Curley v. United States, *supra*, 81 U.S.App.D.C. at 392, 160 F.2d at 232. *See* Powell v. United States, 135 U.S.App.D.C. 254, 257, 418 F.2d 470, 473 (1969); Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967).

### A. *Appellant Cephas*

A review of the evidence in the light most favorable to the Government, does not conclusively establish that appellant Cephas was an active perpetrator of the offense. The victim, Mrs. Jackson, despite an illuminated five or six minute view of her assailants was unable to identify Cephas or McCall at trial or at a police lineup held a few days after the robbery. Indeed, at the lineup she selected two other men as her assailants.[11] Furthermore, her description of Cephas can only be denominated "inconclusive" at best, a "mirage" at worst. She described him as "about five feet five and [as] wearing rather light pants, an approximately light shirt and a lumber jacket," described later by her as a "light jacket." [12] Cephas, who is five feet eight inches tall, was, according to a police photograph, clad in a dark blue sport coat and white turtle neck sweater.

▇▇ Despite the inconclusive identification of Cephas, his conviction may still rest upon the premise that he is an aider and abettor.[13] "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some

11. Curiously, it was never brought out during the trial whether appellants Cephas and McCall were in the lineup which Mrs. Jackson viewed, although McCall did testify that he saw Mrs. Jackson at a lineup. (Tr. 74).

12. The Government asserts that the word "light" refers to the weight of the jacket despite, as appellants point out, the fact

that the previous references to the word "light" denoted color.

13. In the District of Columbia an aider and abettor is prosecuted as a principal. D.C.Code § 22–105. The conviction of the principal perpetrator of the offense is not a prerequisite to conviction of the aider and abettor. Gray v. United States, 104 U.S.App.D.C. 153, 260 F.2d 483 (1958).

sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). *See* United States v. Lumpkin, 145 U.S.App.D.C. 162, 448 F.2d 1085 (1971); Thompson v. United States, 132 U.S.App.D.C. 38, 405 F.2d 1106 (1968); Long v. United States, 124 U. S.App.D.C. 14, 360 F.2d 829 (1966). As we indicated in Bailey (John) v. United States, 135 U.S.App.D.C. 95, 98, 416 F. 2d 1110, 1113 (1969), "[a] *sine qua non* of aiding and abetting . . . is guilty participation by the accused;" and as the court recognized in White v. United States, 366 F.2d 474, 476 (10th Cir. 1966), "[a]iding and abetting implies guilty knowledge."

■ To overcome the victim's failure to conclusively identify Cephas, the Government must rely upon the inference arising from the unexplained possession of recently stolen property. Pendergrast v. United States, 135 U.S.App.D.C. 20, 416 F.2d 776 (1969). However, a prerequisite to the application of the inference is a finding, beyond a reasonable doubt, that the accused was in possession of the property. United States v. Coggins, 140 U.S.App.D.C. 134, 433 F.2d 1357 (1970). Although the requisite possession has been denominated "exclusive" it

> is no more than judicial shorthand for the underlying concept that the accused must bear a distinctive relationship to the property before the inference is allowed. . . .

> \* \* \* \* \* \*

> . . . The association [with the stolen property] suffices to give the inference evidentiary value when it attains such quality that, when coupled with the other evidence, there is a probability of guilt that a prudent mind could accept as not reasonably doubtful. . . .

So it is that the exclusivity requirement, it is held, may be met although the stolen property is not subject to the accused's direct physical control. . . . It may be satisfied by something less than that which in other legal contexts traditional concepts of "possession" may demand. It may be fulfilled, too, by a relationship to the stolen property that is shared with another so long as that relationship is significantly distinguishable from the connection others bear to the property.

United States v. Johnson, 140 U.S.App. D.C. 54, 58–59, 433 F.2d 1160, 1164–1165 (1970). Such possession, which may be actual or constructive, is susceptible of proof by circumstantial as well as direct evidence. It may be singular or joint. *See* Smith v. United States, 385 F.2d 34, 38–39 (5th Cir. 1967); United States v. Jones, 340 F. 2d 913, 915 (7th Cir. 1964); Bourg v. United States, 286 F.2d 124 (5th Cir. 1960).

Confronted with factual situations similar to those at bar in previous years, we now turn to these precedents for the guidance they will undoubtedly give and the respect they deservedly demand. In Goodwin v. United States, 121 U.S.App. D.C. 9, 347 F.2d 793 (1965), upon which appellants principally rely, four occupants of a speeding getaway car were arrested approximately an hour after the robbery of a grocery store in another part of the city. A search of the vehicle resulted in discovery of the stolen money and the weapon used to threaten the proprietor of the store. The active perpetrators of the crime, three in number, were positively identified by the victim. The fourth defendant, Paul Vaughn, a passenger in the vehicle, was not shown to have been in the store during the robbery or in the automobile at the time it was awaiting the three active participants. Although Vaughn denied guilt, he as well as the other three were convicted. On appeal we reversed Vaughn's conviction on the ground that the evidence was insufficient to establish beyond a reasonable doubt that he had been the look-out man.

In Bailey (Barry) v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967), three of four occupants in a getaway car were identified by the victim as wearing clothing "resembling" that worn by his assailants. The fourth occupant, Russell, was not seen by the victim, but was apprehended driving the getaway car forty minutes after the robbery. We upheld the convictions of all the defendants including Russell, distinguishing *Goodwin* on the ground that Russell was a driver as opposed to a passenger, and more importantly, was, as were the other occupants, in physical possession of a part of the nefarious robbery proceeds.

In United States v. Trantham, 145 U.S.App.D.C. 113, 448 F.2d 1036 (1971), two men robbed a parking lot attendant. The victim observed the two fleeing assailants joined by a third—apparently the look-out—jump into a waiting automobile. Before the fleeing vehicle was out of sight, the victim boarded a taxi in hot pursuit keeping the auto in constant sight, except for a few seconds. At the end of the chase one of the occupants of the car—according to the testimony, one of the active assailants —fled, dropping the robbery weapon in the street. Nonetheless, the four remaining occupants of the vehicle were arrested. Searching the automobile, the police recovered the stolen articles and a pistol not used in the robbery. The victim was unable to identify the driver of the auto; positively identified the remaining active perpetrator of the crime, a passenger in the vehicle; inconclusively identified passenger Trantham, the alleged lookout;[14] and was unable to identify the fourth defendant at all. The trial judge granted

a motion for judgment of acquittal by the fourth defendant,[15] but denied it as to the others. On appeal we held *inter alia* that the evidence was sufficient to go to the jury with regard to all appellants,[16] including Trantham, despite the fact that the identification of Trantham, a passenger in the getaway vehicle, was "inconclusive."

■ Having surveyed our decisions we conclude that *Trantham* controls the case *sub judice*. There, as here, the identification of the passenger was "inconclusive" at best. There, as here, a weapon other than that used in the crime was found in the vehicle. Furthermore, in both cases at least one of the original occupants of the automobile fled. Lastly, and most importantly, the short time span between commission of the offense and apprehension of the accused in a speeding vehicle a few blocks from the scene of the crime dictates the application of *Trantham*. The brief period during which the vehicle's flight was unaccounted for does not dilute the impact of *Trantham* and is of no moment in the instant case. We find *Goodwin* factually distinguishable from the case at bar. In *Goodwin* appellant Vaughn was apprehended an hour later in another part of the city. Such a time-distance lapse leads to a more speculative conclusion of criminal involvement than that which now faces us. Juxtaposition of time and place under the instant circumstances makes it highly unlikely that presence in the fleeing vehicle was innocent. There is also little likelihood that an innocent hitchhiker may have been picked up as in State v. Watson, 350 S.W.2d 763 (Mo.1961). Nor is there a "pregnant danger" that

---

14. The only evidence connecting Trantham to the offense, other than his presence in the getaway vehicle, was the testimony, admittedly conflicting, that he was wearing bright green pants. After reviewing discrepancies between testimony elicted and photographs taken, we found the evidence "inconclusive" as to the color of the pants.

15. The trial judge's disposition of the fourth defendant's motion for judgment of acquittal was not before us nor is it binding upon us.

16. The driver of the getaway vehicle did not, however, appeal his conviction.

an innocent bystander has become involved as in *Bailey (John)*. The hot pursuit, time-place frame of reference and the concomitant inference of joint criminal activity distinguishes this case from those such as United States v. Bethea, 143 U.S.App.D.C. 68, 71, 442 F.2d 790, 793 (1971) where we held that "[m]erely showing that appellant was a passenger in the car and in proximity to the heroin is, without more, insufficient to support a finding of possession."

Appellants nonetheless assert that a reversal is mandated in light of the trial judge's [17] subsequent acquittal of defendant Bonham [18] in a separate trial, against whom the evidence was allegedly stronger than against appellant Cephas. We need only respectfully remind appellants that the learned trial judge's acquittal of Bonham, which occurred a mere two days after our *Trantham* decision, is not now before us nor is it binding upon us.

### B. *Appellant McCall*

Appellant McCall need not detain us long. Although he too was unidentified by the victim, her description of him was much stronger than that of Cephas.[19] Furthermore, under the instant circumstances McCall's status as the driver of the getaway car points more strongly to criminal participation. *See* United States v. Caviness, No. 24,290 (D.C.Cir. March 9, 1971) (unpublished). This was precisely one of the grounds for our holding that there was sufficient evidence against the driver of the getaway vehicle in *Bailey (Barry)*.

We therefore conclude that there is sufficient evidence to allow the jury to infer *joint criminal venture* and possession of the purse and shotgun beyond a reasonable doubt against both appellants Cephas and McCall.

17. The same judge presided over the Bonham and Cephas-McCall trials.

18. The trial judge granted the motion of acquittal only as to the robbery-related counts, not as to the possession of the unregistered weapon.

### III. *Instructions*

■ Appellants assert that the trial judge's failure to give the *Pendergrast* instruction constitutes plain error and that the instructions as a whole are misleading and prejudicial.

Although the trial below took place a year after our decision in Pendergrast v. United States, *supra*, wherein we promulgated a model instruction on the inference to be drawn from possession of recently stolen property, the trial judge failed to so instruct. While we regret this omission, we cannot say it was reversible error. For here as in *Pendergrast*, the other instructions cured any potential abuse. The learned trial judge properly instructed the jury on the presumption of innocence, the Government's burden of proving beyond a reasonable doubt the facts from which the inference might be drawn, and the fact that the jury might, but not that it must, draw the inference. These instructions coupled with the fact that no objections were voiced at trial lead us to conclude that no plain error such as would justify reversal has been committed. United States v. Coleman, 137 U.S.App.D.C. 110, 111 n. 7, 420 F.2d 1313, 1314 n. 7 (1969).

■ Appellants also object that the charge to the jury that they may draw an inference from "defendants' possession" of the property created the erroneous impression that both could be found guilty if only one was in possession of the purse. A review of the record, however, clearly indicates that the trial judge carefully and properly instructed the jury that they were to consider the evidence against each appellant separately, study the evidence applicable to each defendant individually and render a separate verdict as to each defendant on each charge. Accordingly, the judgment of the District Court is

Affirmed.

19. The police photograph of McCall confirms the description given by Mrs. Jackson at trial.