NEBEKER, Associate Judge:
 

 In this appeal from convictions on four counts of armed robbery and one count of first degree burglary,
 
 [1]
 
 appellant raises five points of error relating to identification procedures, evidentiary sufficiency, and merger. Finding appellant’s arguments to be lacking in merit, we affirm.
 

 About 3 a. m. on September 20, 1972, two men entered the residence of Mr. Cole (described as a local “after-hours” club) with handguns drawn and took money and a watch from Mr. Cole and money from several of his guests. A man outside the establishment informed nearby police officers McMasters and General that an armed robbery was in progress, and the officers responded. Upon arrival at the club, they looked through a pane of glass in the front door. They observed the shorter of the two robbers instruct Mr. Cole to open the door (apparently in response to a knock) and the taller robber exclaimed “ . . . , that’s a cop.” Mr. Cole opened the door and informed the officers that the robbers had fled “around back”, and the officers pursued. When the police officers confronted the two suspects in the back alley, the shorter suspect pointed his gun at the officers and attempted to shoot, but his gun was apparently on safety. The taller suspect, observed by Officer McMasters to be a Negro male, escaped, but the shorter one, Fronzella Eskeridge, was apprehended by Officer McMasters.
 

 Mr. Cole, having been informed by a bystander that one of the robbers was named Strickland, relayed this information to the police. A police detective assembled about ten to twenty photographs of various individuals named Strickland and showed this “Strickland array” to Mr. Cole, who identified appellant’s picture as portraying the taller robber. This array was not available at trial.
 

 A copy of this picture of appellant was then placed in an array along with eight other mug shots of similar appearance, and this collection was displayed to other witnesses (Mayo, Watkins, and Officer McMasters), all of whom identified appellant’s picture as that of the taller robber. In a subsequent lineup, viewed individually by these witnesses, each identified appellant. These witnesses also identified appellant in court. When the jury returned its verdict, it found appellant guilty of the offenses charged, but reported “no finding” as to codefendant Eskeridge. .
 

 Appellant’s principal argument is that the so-called “Strickland array” created “a very substantial likelihood of irreparable misidentification”, Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), thus fatally tainting his conviction. He contends that this process was inherently suggestive since the photographs represented persons of various age groups who did not necessarily bear any physical resemblance to appellant. Since the array regrettably was not preserved by the government, and was thus unavailable for scrutiny at trial, he urges us to assume that it was unduly suggestive.
 

 The record reveals that the police assembled this array by selecting from
 
 *746
 
 arrest files pictures of those persons named Strickland. This strikes us as a perfectly logical step clearly negating any deliberate effort at suggestiveness. The police did not know whether appellant’s photograph was in this group. Furthermore, the officer did not inform Mr. Cole that the photographs were all of persons named Strickland. This manner of selecting from arrest files photographs of persons with the name “Strickland” is so unlikely to produce a misidentification, even through inadvertent suggestiveness as to a single subject, that it would strain common sense to presume undue suggestibility in the array. Thus, the danger of the police influencing the witness in his identification choice of photographs
 
 (see
 
 Simmons v. United States,
 
 supra
 
 at 383, 88 S.Ct. 967) was not present. We conclude that these factors serve to defeat appellant’s claim that the array must be presumed to have been unduly suggestive. Therefore, the court’s denial of appellant’s motion to suppress Mr. Cole’s pictorial identification was not error. We need not reach the issue of independent source for the identification.
 

 Appellant also urges that the photographic identification of Mr. Watkins, an eyewitness to the robbery, was tainted by the fact that Mr. Watkins observed Mr. Strickland’s name on the back of the photograph which he picked out. We find this factor to lack significance as far as affecting the reliability of his photographic identification since he saw the name only after selecting the picture. Furthermore, his ample opportunity to observe appellant at the time of the crime (about IS minutes as Strickland held a gun at his head) was sufficient to counteract any taint regarding his in-court identification which the observation of the name oh the photograph might have created had seeing the name been significant.
 
 See
 
 Simmons v. United States,
 
 supra
 
 at 385-86, 88 S.Ct. 967. We conclude that the denial of appellant’s motion to suppress Watkins’ identification was not error.
 

 We also considered appellant’s argument that his motion for acquittal should have been granted because of asserted unreliability of all the eyewitness identifications stemming from an argued lack of opportunity to observe and from the presumed taint resulting from the Strickland array and Mr. Watkins’ observation of Strickland’s name on the back of his photograph. We find no merit to the argument. The identifications by Mr. Watkins and Mr. Cole have already been discussed, and we find no occasion here to question the reliability of the in-court identifications by eyewitnesses McMasters, Mayo, and Smith. An independent basis for their in-court identifications is not properly at issue
 
 [2]
 
 since there was no contention of suggestiveness in any of the prior pictorial or lineup identifications by these witnesses. United States v. Hurt, 155 U.S.App.D.C. 217, 220 n. 4, 221, 476 F.2d 1164, 1167 n. 4, 1168 (1973).
 

 Appellant also raises the argument that armed robbery is a lesser included offense of first degree burglary or alternatively an offense coextensive with first degree burglary, and that therefore the two concurrent five-to-fifteen-year sentences meted out for these offenses should not both be allowed to stand. This argument has no merit. First degree burglary, an offense against habitation, is completed when an individual enters an occupied dwelling with an intent to commit a criminal offense. Massey v. United States, D.C.App., 320 A.2d 296, 299 (1974). The armed robbery, an offense against the person, thereafter committed is an offense separate and distinct from the burglary. Dixon v. United States, D.C.App., 320 A.2d 318, 322 (1974); Irby v. United States, 129 U.S.App.D.C. 17, 390 F.2d 432 (en banc 1967).
 

 
 *747
 
 Another of appellant’s contentions is that there was insufficient evidence to support his conviction for the armed robbery of Yvonne Holt. One Rose Smith, who was present at the robbery, testified that she saw Eskeridge “take money from Yvonne.” The jury, however, made no finding as to Eskeridge’s guilt on this charge (nor on any of the other charges) since it was subsequently unable to reach a verdict as to him. While conceding that conviction of the principal perpetrator of an offense is not a prerequisite to conviction of an aider and abettor (United States v. McCall, 148 U.S.App.D.C. 444, 447 n. 13, 460 F.2d 952, 955 n.13 (1972)), appellant nevertheless argues that the entry of a “no finding” as to the principal prohibits his conviction as an aider and abettor.
 
 [3]
 
 Appellant cites no authority for this proposition, and we find no basis for it. In order to convict a defendant as an aider and abettor it need only be established that the act constituting the offense was in fact committed by someone. Gray v. United States, 104 U.S.App.D.C. 153, 154, 260 F.2d 483, 484 (1958) (affirming the conviction of one defendant despite the acquittal of a codefendant).
 

 The question of the validity of appellant’s conviction for the armed robbery of Yvonne Holt thus boils down to a determination of whether there was insufficient evidence to prove that she was in fact robbed. Miss Holt did not testify. The sole evidence of the robbery of this victim was the testimony of Rose Smith that “I [saw] him [Eskeridge] take money from Yvonne.” Appellant urges that on the basis of such evidence, a finding free from reasonable doubt was not possible. See United States v. McCall,
 
 supra,
 
 148 U.S. App.D.C. at 447, 460 F.2d at 955. We do not agree. As mentioned, the fact that the jury did not see fit to find Eskeridge guilty of the offense did not preclude its finding appellant guilty. Miss Smith’s testimony, if believed, was sufficient to support a jury determination that the offense was in fact committed. Under the “one-witness” rule, the testimony of a single witness to a robbery is sufficient to uphold a conviction, 7 Wigmore, Evidence § 2034 (3d ed. 1940), and that witness need not be the victim. Examples of affirmed robbery convictions where the victim did not testify are Cross v. United States, 122 U.S.App.D.C. 283, 353 F.2d 454 (1965) and Carey v. United States, 111 U.S.App.D.C. 300, 296 F.2d 422 (1961), the respective victims having died within moments of the robbery.
 

 The judgments of conviction are, accordingly,
 

 Affirmed.
 

 [1]
 

 . The armed robbery victims were Frederick S. Cole, Gwendolyn Mayo, Albert Watkins, and Yvonne Holt.
 

 [2]
 

 . Nevertheless, we note that the opportunity of these witnesses to observe appellant at the scene of the crime was substantial.
 

 [3]
 

 . It is noted that the jury was presented with sufficient evidence of Strickland’s active participation in the whole enterprise to support his conviction for any of the individual robberies which in fact occurred as part of this enterprise.