Kevin MAYFIELD, Appellant,

v.

UNITED STATES, Appellee.

No. 93–C0–1257.

District of Columbia Court of Appeals.

Argued September 13, 1994.

Decided June 12, 1995.

John A. Shorter, Jr., Washington, DC, for appellant.

Barbara A. Grewe, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Roy W. McLeese III, and L. Jackson Thomas II, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

In a joint trial, a jury convicted appellant of premeditated first degree murder while armed under an aiding and abetting theory, but convicted the actual killer only of second-degree murder while armed. On direct appeal, appellant's conviction was affirmed. A subsequent denial by the trial court of his first motion under D.C.Code § 23–110 (1989) was also affirmed by us.

Now before us is an appeal from the denial of a second motion to vacate judgment pursuant to § 23–110. In that motion, appellant claimed that he was denied due process because the conviction of the principal of second-degree murder constituted a "failure of proof" of one of the elements of aiding and abetting; namely, that someone other than appellant committed first degree murder while armed.

The trial court denied the motion, concluding that the claim was procedurally barred from consideration on the merits. Appellant asserts that his failure to raise the issue previously should have been excused on either of two grounds: first, that he made a colorable claim of actual innocence, and second, that he had in fact made a sufficient showing of cause and prejudice. We affirm.

## I.

On April 2, 1987, appellant walked into a house at 1723 Montana Avenue, N.E., and stated to those present that he was going to "kill that bastard Michael Ward." Later that day, appellant and codefendant Gene Dudley drove to the apartment building where Ward resided. Dudley approached Ward, who was standing in front of the building, and started punching him. Appellant joined the fight by holding Ward as Dudley continued to assault him. Dudley retrieved a baseball bat from his car and chased Ward, who fled into his apartment building. As they left the scene, appellant stated "come on, he's going to get his gun," "we going to do him," and "we're going to get the burner."

Appellant and Dudley then went to appellant's house, where appellant apparently retrieved a gun, and drove to a recreation center on Montana Avenue. Appellant got out of the car, carrying the gun, and went with Dudley into the recreation center. Inside the recreation center, appellant told people that he was going to "fuck Michael up" or "kill" Ward when he saw him.

Appellant and Dudley returned to the car, and drove away. Appellant's beeper went off, and he stopped the car and went outside. When appellant returned to the car, appellant said that "this was a set up to get Mike outside."

Appellant and Dudley returned to Ward's apartment building and parked in front, yelling for Ward and honking the horn. Dudley was now holding the gun. Ward came out, walked into the middle of the street, and showed appellant and Dudley that he was not carrying a gun. After an exchange of some words, Dudley moved his arm in front of appellant, who "eased back" in the car seat, out of the gun's path, and Dudley fatally shot Ward in the back. Appellant drove back to his mother's house, and stated "we have [t]o do something with the gun." Dudley and another person threw the gun down a sewer.

Appellant and Dudley were jointly tried before Judge Robert A. Shuker in January 1988 for first degree murder while armed, D.C.Code §§ 22-2401, -3202 (1989), and carrying a pistol without a license ("CPWL"), D.C.Code § 22-3204. The appellant, although indicted as a principal, was tried under an aiding and abetting theory. The jury convicted appellant of first degree murder while armed and CPWL. However, the jury found Dudley guilty of the lesser-included offense of second-degree murder while armed, as well as CPWL.

Appellant's trial counsel, W. Gary Kohlman, filed a motion for a new trial. Among the grounds asserted were: (1) the jury verdicts were "hopelessly irreconcilable"; it simply "made no sense" that the aider and abettor was found guilty of first degree murder where the government failed to prove that the gunman as principal premeditated the killing; and (2) the evidence was insufficient to sustain a conviction of first degree murder; since the jury found that the principal did not premeditate, there was necessarily insufficient evidence to show that appellant premeditated. The trial court denied the motion in all respects.

On direct appeal, appellant, through his attorney Fred R. Joseph, raised two issues relating to the refusal to sever and one issue relating to refusal to grant certain pre-trial discovery. We affirmed in an unpublished opinion, noting, however, in connection with the claim that conflicting defenses required a severance, that "there was ample independent evidence to support Mayfield's conviction." *Dudley v. United States,* No. 88–362, Memorandum Opinion and Judgment (D.C. June 15, 1990).

On November 7, 1990, appellant *pro se* filed his first motion under D.C.Code § 23–110. Among numerous issues raised were: (1) ineffective assistance of appellate counsel; and (2) insufficient evidence to convict for aiding and abetting since the evidence showed that the co-defendant actually killed the victim. The trial court denied the motion, ruling that the claims either had been previously resolved on direct appeal or were barred from consideration for failure to show cause and prejudice for not raising them on direct appeal. With respect to appellant's argument of ineffective assistance of appellate counsel, the trial court "[did] not reach this issue, since the performance of appellate counsel is a matter solely within the purview of the Court of Appeals."

Appellant appealed the denial of this first § 23–110 motion. On May 23, 1991, appellant, acting through his counsel, Michael Stern, filed a motion with this court to recall the mandate on the direct appeal, claiming ineffective assistance of appellate counsel for his failure: (1) to argue ineffective assistance of trial counsel either on direct appeal or in a § 23–110 motion; (2) to argue on appeal the inconsistency of the verdicts, and (3) to argue that appellant was prejudiced by pretrial publicity. On June 11, 1991, the division of this court that heard the direct appeal denied the motion pursuant to *Watson v. United States,* 536 A.2d 1056, 1060 (D.C.1987) (en banc), *cert. denied,* 486 U.S. 1010, 108 S.Ct.

1740, 100 L.Ed.2d 203 (1988). Subsequently, a different division, in an unpublished opinion, affirmed the denial of the § 23–110 motion, agreeing with the trial court that appellant had not sufficiently explained his failure to present on direct appeal the issues raised in the instant collateral attack. *Mayfield v. United States*, Memorandum Opinion and Judgment, No. 91–297, April 7, 1992. Specifically, ineffective assistance of trial counsel could not be a basis for cause where the claim was not raised during the pendency of direct appeal by a § 23–110 motion and where the errors alleged were correctable on direct appeal. Moreover, with respect to his claim of cause due to ineffective assistance of appellate counsel, this court rejected the assertion because appellant had not prevailed on his motion to recall the mandate. We concluded that "Mayfield present[ed] no new issues here; he merely restate[d] claims that were presented or could have been presented before."

On June 4, 1993, appellant, now represented by John A. Shorter, Jr., filed his second § 23–110 motion, to which we now turn.

## II.

"Section 23–110 is not designed to be a substitute for direct review." *Head v. United States*, 489 A.2d 450, 451 (D.C.1985). Hence, for many years, it has been a well-established principle for collateral attack on a criminal conviction that "[w]here a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Id.* While recognizing this doctrine, relied upon by the trial court in denying the motion, appellant makes several arguments in an attempt to avoid its application here.

## A.

First, appellant argues that the allegation in his second § 23–110 motion of ineffective assistance of his appellate counsel on direct appeal constitutes sufficient cause. However, as Judge Shuker correctly ruled in denying appellant's first § 23–110 motion, the issue of ineffective assistance of appellate

counsel can only be litigated through the filing of a motion to recall the mandate in this court. *Watson v. United States*, 536 A.2d 1056, 1060 (D.C.1987) (en banc) ("A motion . . . to recall the mandate is the appropriate avenue to take in presenting a[n] [ineffective assistance of appellate counsel] challenge"); *see Head v. United States*, 626 A.2d 1382, 1384 (D.C.1993) ("§ 23–110 does not authorize the relief that appellant seeks even if the court were to conclude that he was denied the effective assistance of [appellate] counsel"), *cert. denied*, —— U.S. ——, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994). The reasoning is clear: "the Superior Court should not have authority to rule on the constitutionality of an appellate proceeding." *Watson*, 536 A.2d at 1060. Here, as in *Head*, appellant first filed a motion to recall the mandate, and later filed a § 23–110 motion based on the same ground, ineffectiveness of appellate counsel. Our ruling in *Head* applies to this case as well:

> although appellant . . . filed motions . . . to recall the mandate . . . the merits underlying his challenge to the denial of his § 23–110 motion are still not properly before the court. . . . By denying his motion [to recall the mandate], this court found that it did not have sufficient merit. . . . Appellant cannot use this appeal to relitigate issues that the court has previously resolved against him.

*Head* at 1384–85.

Appellant claims that the trial court's ruling that it need not reach the ineffective assistance of appellate counsel issue was erroneous because it was required to consider it as an element of cause pursuant to *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); otherwise the § 23–110 motion would not be equivalent in scope of review and relief to federal habeas corpus. However, *Carrier* itself holds that "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default," *id.* at 489, 106 S.Ct. at 2646. Moreover, our requirement that ineffective assistance of appellate counsel be re-

viewed in motions to recall the mandate rather than in collateral attack is congruent with the procedure used by several federal courts in addressing motions under § 2255 to collaterally attack federal convictions. *See Watson, supra* at 1060 ("This construction is supported by decisions on the analogous federal statute, 28 U.S.C. § 2255"); *Rivera v. United States,* 477 F.2d 927 (3d Cir.1973) (motion to recall mandate, not § 2255 motion, is proper method to challenge ineffective assistance of appellate counsel); *United States v. Winterhalder,* 724 F.2d 109 (10th Cir. 1983). Therefore, we see no reason to alter our long-standing rule that trial courts may not consider ineffective assistance of appellate counsel when ruling on § 23–110 claims.

Appellant argues that a rule precluding the trial court from considering ineffective appellate assistance as cause for the procedural default would "effectively time bar all 23–110 claims defaulted on direct appeal due to ineffective assistance." This is not so; in cases where a claim is truly defaulted on direct appeal due to ineffective assistance, a defendant will receive effective review of the substantive issue by this court in the course of ruling on a timely motion for recall of the mandate and subsequent appellate proceedings. *See Watson, supra* at 1069–1072; *Griffin v. United States,* 598 A.2d 1174, 1176–77 (D.C.1991). *See also Stratmon v. United States,* 631 A.2d 1177 (D.C.1993). To the extent that appellant is challenging the 180-day time limit for filing motions to recall the mandate contained in D.C.App.R. 41(c), that argument should be addressed to the court in the factual context of such a motion; it is not a basis, without more, for abrogating the *Watson* procedure.[1] In any event, as we demonstrate in the next section of the opinion, appellant himself has not been affected by the time limit.

**B.**

In the case before us, the issue of the constitutional competence of appellate counsel has in fact been passed upon by us. As already set forth above, appellant as part of his appeal from the denial of his first 23–110 motion sought, pursuant to *Watson,* a recall of the mandate on direct appeal, and included among the grounds the failure to argue the "irreconcilable inconsistency" of the two verdicts. Thus, this issue was fully litigated before this court and resolved against him. *See supra,* p. 1252.[2] The denial of a motion to recall the mandate is dispositive of the issue of "cause": any conduct less than ineffective assistance of counsel can not serve as "cause" for failure to raise a claim for purposes of collateral attack. *Carrier,* 477 U.S. at 492, 106 S.Ct. at 2647 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default"). "It is well-settled that where an appellate court has disposed of an issue on appeal, it will not be considered afresh on collateral attack in a trial court of the same judicial system, absent special circumstances." *Doepel v. United States,* 510 A.2d 1044, 1045–46 (D.C.1986). No such circumstances are presented here.

Appellant challenges the application of this principle of finality by asserting that his present claim is different from that raised in the post-trial motion by Mr. Kohlman and in the motion to recall the mandate. He asserts that his present claim is not based upon the inconsistency of the verdicts but rather upon a "failure of proof" of one of the elements of the crime of which appellant was convicted on an aiding and abetting theory; namely, that someone other than appellant committed the crime of premeditated first-degree murder.

We think that this articulation is in fact no more than a rephrasing of the "inconsistent

---

1. We note in this regard D.C.App.R. 26(b), allowing the court "for good cause shown" to enlarge the time prescribed by the rules for doing any act. *Cf. Head v. United States,* 626 A.2d 1382, 1384 n. 3 (D.C.1993).

2. Although the motion was filed more than 180 days after the issuance of the mandate, appellant argued that he had effectively preserved his argument by his *pro se* filing of the 23–110 motion alleging ineffective assistance of counsel. Our opinion disposing of the appeal from the denial of his 23–110 motion makes clear that the denial of the motion to recall the mandate was made on the merits. *Mayfield v. United States,* Memorandum Opinion and Judgment, No. 91–297, April 7, 1992, at p. 3.

verdicts" argument.[3] Appellant's assertion of "failure of proof" rests on the proposition that the jury's verdict with respect to co-defendant Dudley represents a finding, by the very jury that convicted appellant, of insufficient evidence to show that the principal killed with premeditation and deliberation. But it is equally possible that the jury was exercising its power of nullification or that other factors were at work. *Farina v. United States*, 622 A.2d 50, 60 (D.C.1993) ("jury nullification permits jurors to acquit a defendant on the basis of their notions of justice, even if they believe he or she is guilty as a matter of law"); *Watts v. United States*, 362 A.2d 706, 710 n. 5 (D.C.1976) ("the exercise of a jury's prerogative-in-fact to acquit out of conscience or prejudice is a tolerated 'anomaly in the rule of law'"); *United States v. Dougherty*, 154 U.S.App. D.C. 76, 95, 473 F.2d 1113, 1132 (1972) ("the existence of an unreviewable and unreversible power in the jury, to acquit in disregard of the instructions on the law given by the trial judge, has for many years co-existed with legal practice and precedent").

■ We are not cited by either party to any case, nor have we found any, where in a joint trial the principal was convicted of a lesser offense than the aider and abettor.[4] The verdict here, however, is consistent with *Strickland v. United States*, 332 A.2d 746, 748–49 (D.C.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975), the only case in our jurisdiction bearing on the issue. In *Strickland,* the aider and abettor and the principal were jointly tried. *Id.* Appellant, the aider and abettor, was convicted of armed robbery, and the jury made no finding as to the guilt of the principal. *Id.* at 748. Appellant argued that this prohibited his conviction as an aider and abettor. *Id.* This court concluded:

> Appellant cites no authority for this proposition, and we find no basis for it. In order to convict a defendant as an aider and abettor it need only be established that the act constituting the offense was in fact committed by someone. The question of the validity of appellant's conviction for the armed robbery ... thus boils down to a determination of whether there was insufficient evidence to prove that [the victim] was in fact robbed.

*Id.* at 749. The analysis focused on whether there was sufficient evidence to support the conviction of the aider and abettor, not the outcome with respect to the principal. *Id.* Likewise in the case before us, there plainly was sufficient evidence for a reasonable jury to conclude that appellant aided and abetted first degree murder while armed. Indeed, on the direct appeal itself, we so held in concluding that "there was ample indepen-

---

3. Moreover, if the claims are different, the new claim of ineffective assistance of counsel cannot be litigated in the trial court via a § 23–110 motion. *See Head,* 626 A.2d at 1383–84; *Watson,* 536 A.2d at 1057–59.

4. In a separate trial of the aider and abettor, an aider and abettor's liability does not necessarily turn on the conviction of his principal. An aider and abettor may be convicted of an offense even though the principal has not been convicted. *Murchison v. United States,* 486 A.2d 77, 81 (D.C. 1984) ("moreover, there is no prerequisite that the principal perpetrator of the offense also be convicted"); *Standefer v. United States,* 447 U.S. 10, 14–20, 100 S.Ct. 1999, 2003, 64 L.Ed.2d 689 (1980) (conviction of principal is not a prerequisite to an aiding and abetting conviction, even where principal is acquitted in a separate trial); *United States v. McCall,* 148 U.S.App.D.C. 444, 450, 460 F.2d 952, 958 (1972) (acquittal of principal in separate trial does not preclude conviction of aider and abettor); *People v. Simpson,* 66 Cal.App.2d 319, 152 P.2d 339, 344 (1944); *State v. Martino,* 27 N.M. 1, 2–3, 192 P. 507, 508–09 (1920); *State v. Austin,* 31 N.C.App. 20, 228 S.E.2d 507, 510 (1976).

Likewise, the aider and abettor may be convicted of a lesser or greater offense than the principal. *Branch v. United States,* 382 A.2d 1033, 1035 (D.C.1978) (aider and abettor convicted of lesser offense); *Williams v. State,* 383 So.2d 547, 554 (Ala.Crim.App.1979); *Pendry v. State,* 367 A.2d 627, 630 (Del.1976); *Potts v. State,* 430 So.2d 900, 902–03 (Fla.1982); *State v. Lopez,* 484 So.2d 217, 225 (La.Ct.App.1986); *State v. McAllister,* 366 So.2d 1340, 1343 (La.1978); *Handy v. State,* 23 Md.App. 239, 326 A.2d 189, 196 (1974); *People v. Paige,* 131 Mich.App. 34, 345 N.W.2d 639, 641 (1984); *State v. Cassell,* 24 N.C.App. 717, 212 S.E.2d 208, 211–12 (1975); *State v. Tremblay,* 4 Or.App. 512, 479 P.2d 507–511 (1971); *Commonwealth v. Strong,* 484 Pa. 303, 399 A.2d 88, 90 (1979); *State v. Wilder,* 25 Wash.App. 568, 608 P.2d 270, 273–74 (1980); *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879, 881–82 (1972).

dent evidence to support Mayfield's conviction."[5]

Considerations of this sort underlie the consistent refusal to accept arguments for reversals of criminal convictions on grounds of inconsistent verdicts. *See Ransom v. United States,* 630 A.2d 170, 172 (D.C.1993) ("inconsistent jury verdicts in a criminal case will not be disturbed on appeal merely because they are inconsistent") (quoting *Whitaker v. United States,* 617 A.2d 499, 502 (D.C.1992)); *Davis v. United States,* 613 A.2d 906, 913 (D.C.1992) ("nor can the fact of inconsistent verdicts defeat the government's claim of evidentiary sufficiency"); *Edmonds v. United States,* 609 A.2d 1131, 1132 (D.C. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 2983, 125 L.Ed.2d 679 (1993). *See also Khaalis v. United States,* 408 A.2d 313, 342–43 (D.C.1979) ("Juries are permitted to return inconsistent verdicts. We cannot permit speculation about the jury's reasons for its verdicts"), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *Steadman v. United States,* 358 A.2d 329, 332 (D.C. 1976).

The Supreme Court has long held steadfast to the principle that jury verdicts will not be overturned for inconsistency, since "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court strongly reaffirmed the *Dunn* rule after several Courts of Appeals had diverged from it; the Court stated that inconsistent verdicts may well be a sign of jury leniency or compromise, and that since

the prosecution had no recourse to correct jury errors in favor of defendants, neither should defendants be allowed a new trial in such cases.

In light of this state of the law, it is not remarkable that appellant's post-trial motion and his motion to recall the mandate in the face of the two different verdicts did not meet with any more success than his rephrased argument in a renewed collateral attack does here.

### C.

■ Finally, appellant argues that he need not meet the cause and prejudice requirement because he is asserting his "actual innocence." *Sawyer v. Whitley,* — U.S. —, ——–—, 112 S.Ct. 2514, 2518–20, 120 L.Ed.2d 269 (1992); *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986); *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50. Under this exception to the cause and prejudice requirement, the trial court must decide collateral claims on the merits if the defendant establishes that he has a colorable claim of actual innocence. *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627.[6] Otherwise put, the trial court may reach the merits of a defaulted claim "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649. However, this exception applies to actual, not legal, innocence. *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). A prototype case of actual innocence is where the government has convicted the wrong person of the crime.[7] *Sawyer,* — U.S. at —, 112 S.Ct. at 2519.

*Sawyer, supra.* In *Schlup v. Delo,* — U.S. —, —, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995), the Court held that *Carrier's* "probably resulted" standard was the correct one, and that a defendant must show that it is "more likely than not" that no reasonable juror would have convicted him.

---

**5.** We made this finding in rejecting appellant's argument that his case should have been severed from that of Dudley, on grounds of "irreconcilable defenses." *See Tillman v. United States,* 519 A.2d 166, 170 (D.C.1986).

**6.** The Supreme Court has recently resolved the question of whether defendants must prove only that a constitutional violation "probably resulted" in the conviction of an innocent person, *see Carrier, supra,* or whether they must meet the more stringent burden of proving their actual innocence by clear and convincing evidence, *see*

**7.** A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. · Such claims are of course regularly made on motions for new trial after conviction

■ Several circuit courts have elaborated on the meaning of actual innocence in the area of sentencing of habitual offenders. In those situations, the defendant, receiving an enhanced sentence under a habitual offender statute, challenges the validity of a prior conviction, which formed the basis for the enhanced sentence. *See, e.g., Narcisse v. Dahm,* 9 F.3d 38 (8th Cir.1993); *Jones v. Arkansas,* 929 F.2d 375, 380–81 (8th Cir. 1991); *Mills v. Jordan,* 979 F.2d 1273, 1278–79 (7th Cir.1992).[8] In *Narcisse,* the defendant argued that the documentation supporting three of his convictions, used for an enhanced sentence, did not show that the guilty pleas were intelligently made in violation of his constitutional rights. *Id.* at 39. The United States Court of Appeals for the Eighth Circuit held that the defendant was challenging the legal validity of his conviction and not the factual validity—the defendant did not deny receiving prior convictions nor did he allege that he was actually innocent of the underlying crimes. *Id.* at 40. Thus the claim was one of legal not actual innocence.[9] *Id.; see also Riggins v. McMackin,* 935 F.2d 790, 793 (6th Cir.1991) (defendant challenging guilty plea as not knowing and voluntary, since trial court did not determine whether defendant understood the maximum penalty, was not making claim of actual innocence where defendant did not claim he was innocent of underlying offense but rather that he was sentenced improperly). In *Mills v. Jordan, supra,* 979 F.2d at 1279, the court concluded that the defendant was also raising a claim of legal innocence and not actual innocence. The defendant claimed that evidence of his criminal history failed to prove beyond a reasonable doubt the two prior convictions, as required by the habitual offender statute. *Id.*

■ Here, appellant claims that he did not have to show cause and prejudice because he has made a colorable showing of actual or factual innocence of first degree murder while armed. Again, however, his argument is bottomed on the assertion that the conviction of the principal of a lesser included offense necessarily constitutes a failure of proof of one of the elements of the higher degree offense, of which the aider and abettor was convicted. This is a far cry from a claim that appellant is in fact innocent of the crime for which he was convicted; at best, appellant's contention is one of legal innocence. *See Narcisse,* 9 F.3d at 40. We simply do not have before us an instance of that "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649.

Accordingly, the trial court's denial of appellant's motion must be and hereby is

*Affirmed.*

---

in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake.
*Sawyer,* —— U.S. at —— –——, 112 S.Ct. at 2519–2520.

8. The defendant would not have challenged the prior conviction on direct appeal, and thus the procedural default doctrine would apply. In order to avoid the procedural default doctrine, the defendant would assert the actual innocence exception.

9. "Actual innocence, of course, does not require innocence in the broad sense of having led an entirely blameless life." *Schlup v. Delo, supra,* —— U.S. at —— n. 47, 115 S.Ct. at 868 n. 47. Rather, it refers to a person being "actually innocent of the crime" for which he was convicted. *Schlup* at ——, 115 S.Ct. at 865. As the cases cited above demonstrate, this is interpreted to mean that the person did not commit the crime, not that he merely has a legal argument as to why he should not be held guilty for the crime that he committed.