David L. WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

No. 9693.

District of Columbia Court of Appeals.

Argued July 13, 1976.

Decided Sept. 7, 1977.

Rehearing en Banc Denied
Nov. 23, 1977.

Katharine Kravetz, Public Defender Service, for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Douglas J. Behr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

After a trial by jury, appellant, David L. Washington, was found guilty of two counts of armed robbery (D.C.Code 1973, §§ 22–2901, –3202), two counts of robbery (D.C.Code 1973, § 22–2901), and three counts of assault with a dangerous weapon (D.C.Code 1973, § 22–502). He was sentenced to five to fifteen years on both of the armed robbery counts and two to six years on each of the remaining counts. The sentences were to run concurrently.

Appellant argues that (1) he was denied his Sixth Amendment right to counsel at a lineup, and that therefore it was error for the trial court to admit testimony concerning the lineup and the subsequent in-court identifications; (2) the trial court erred in not imposing sanctions on the government for its failure to preserve photographic arrays; (3) he was denied his Sixth Amendment right to a speedy trial; and (4) his two convictions for robbery and two of his three convictions for assault with a dangerous weapon [1] should be reversed as they are

lesser included offenses of armed robbery. The government concedes, and we agree, that assault with a dangerous weapon and robbery are lesser included offenses of armed robbery and thus we remand this case with orders to vacate those sentences. In all other respects, we affirm.

The convictions in this case arose from a robbery in the apartment of Mr. and Mrs. William Hearns. Both Mr. and Mrs. Hearns testified that they were home with their small child one evening when three men broke into their apartment. Mr. Hearns testified that when he responded to a knock on the door a man, later identified as appellant, asked him questions concerning the whereabouts of another tenant of the building. A second man suddenly appeared and pointed a shotgun at Mr. Hearns; the two men then forced their way into the apartment. Mr. Hearns was tied up and forced to lie on the floor near the kitchen while the men went through the apartment. Mr. Hearns also testified that the entire robbery took approximately six minutes, that most of the time he could see appellant, and that he got "as good a look as anybody can get at anybody" during that time.[2] Mrs. Hearns testified that the men were in the apartment approximately ten minutes and that she "just stood . . . and stared at" appellant Washington for several of those minutes. There was also testimony that the hall outside the apartment was well lighted and the living-dining room area of the apartment was lighted by an aquarium light and by the light from the kitchen. Additionally, the lights in both the bedroom [3] and bathroom were on.

Mr. Hearns testified that several weeks after the robbery, he saw appellant on East Capitol Street. He followed appellant and tried to call the police but the phone was

---

1. The third conviction for assault with a dangerous weapon was against the complainants' young child. Appellant was convicted of nothing else with regard to the young child and hence that one assault charge must stand.

2. At one point the man later identified as appellant took a package of cigarettes from Mr.

Hearns' pocket. Mr. Hearns testified that "he was right in my face then" and that at two other times he was "right in my face."

3. Mrs. Hearns was in the bedroom for several minutes with the robbers.

out of order.[4] At about the same time Mr. Hearns, who had been asking questions around the neighborhood about who might have committed the robbery, learned that a man named "Weasel" was bragging about the robbery. Mr. Hearns informed the police that he thought a person named "Weasel" had committed the crime. The police then showed to Mr. Hearns photographs of several persons with that nickname. Mr. Hearns did not make an identification from those photographs.

Shortly thereafter, Mr. Hearns found out that "Weasel's" real name was David Washington. The police then showed to Mr. Hearns several "Washington" photographs but again he made no identification. Then, on February 22, Mr. Hearns was shown more photographs from the Washington file and this time he identified appellant. Six weeks after the photo identification both Mr. and Mrs. Hearns identified appellant in a lineup. At trial there was testimony as to both the photo identification and the lineup identifications. Additionally, both Mr. and Mrs. Hearns made in-court identifications of appellant.

Appellant's first argument is that the lineup was conducted in violation of his Sixth Amendment right to counsel. The facts giving rise to this argument are unusual and will be set out in full.

Counsel was appointed to represent appellant on April 5, 1974. At arraignment that day, counsel was informed that a lineup would be conducted five days later. When he arrived for the lineup he was informed that appellant was not in the lineup and that no witnesses had shown up to make an identification. Counsel did view the lineup, however, since he was then representing two other clients in the lineup. At that time counsel did not recognize appellant,[5] though he was then present in the lineup. Then, after counsel left the lineup, the witnesses arrived and identified appellant.[6]

Appellant, relying principally on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), argues that the "whole point" of these cases is that "an accused is entitled by the Sixth Amendment to the *assistance* of counsel at his lineup, not just the presence of counsel." The government, on the other hand, argues that for the purposes of the Sixth Amendment counsel was sufficiently present at the lineup. Depending upon the facts, the government's theory would be debatable, at the least, but under these unusual circumstances, even if we were to assume error, it was harmless beyond a reasonable doubt. *Gilbert v. California, supra*, at 274, 87 S.Ct. 1951; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Additionally, we find that the in-court identifications by the complaining witnesses were proper as they were based, as the trial court found, upon an independent source.[7]

Our finding of harmlessness in the introduction of the lineup testimony is based upon three factors: (1) the reliability of the Hearns' identification; (2) our own viewing of a photograph of the lineup which shows little suggestivity; and (3) the fact that the photograph of the lineup was introduced into evidence and defense counsel had the opportunity to, and did, argue to the jury that the lineup was suggestive.

---

4. During cross-examination, Mr. Hearns testified that he saw appellant another time on the street. It is not clear from the record when this took place.

5. The stated reason for counsel's failure to recognize appellant is that counsel had been appointed to represent several other defendants, along with appellant. Additionally, he had only seen appellant "for about twenty seconds while the felony complaint was read."

6. Appellant claims counsel left before the witnesses arrived. Appellee claims that it is uncertain when counsel left. Nevertheless, it is undisputed that he was not actively involved in the lineup process when Mr. and Mrs. Hearns made the identification.

7. *See United States v. Wade, supra*, 388 U.S. at 241, 87 S.Ct. 1926. We do not view the differences between the Hearns' description of the robber's age and height and appellant's actual age and height to be material in the circumstances of this case.

Significantly, Mr. Hearns had made a photo identification over a month before the lineup. The evidence shows that both Mr. and Mrs. Hearns had a good opportunity to view appellant during the crime. Both of them saw appellant's face from a very short distance and the lighting was at least moderately good. Important to the issue of reliability is the fact that Mr. Hearns testified that on two different occasions he saw appellant on the street after the robbery. Both times Mr. Hearns had tried to follow appellant but had been unable to do so. The information obtained in the neighborhood by Mr. Hearns as to the identity of the robber was instrumental in narrowing the field of suspects to the photographs in the police department's files of individuals with the last name of "Washington", from which the photo identification of appellant was made prior to the questioned lineup. Furthermore, the lineup photo was in evidence and appellant's counsel argued suggestibility to the jury.[8]

■ Appellant's second argument, that the trial court committed reversible error in not imposing sanctions on the government for its failure to preserve *all* the arrays (including those from which no identification was made), is also without merit. There is no duty upon the government to preserve photographic arrays in which no identification was made.[9]

■ There is, however, a duty to preserve, and the defendant has a right to discover, all photographic arrays from which an identification has been made. Super.Ct.Cr.R. 16(c); *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642, *aff'd after remand,* 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971). *See also Simmons v. United States,* 390 U.S. 377, 388, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Metropolitan Police Dep't General Order Series 304, No. 7 (Procedures for Obtaining Pretrial Eyewitness Identification 1971). The government did produce the "Washington" file from which the victim chose appellant's picture. Appellant argues, however, that because the victim had not been shown the entire file when he picked out appellant's picture and the testimony was conflicting as to how many pictures the victim was shown [10] production of the "Washington" file was not production of the same array from which the victim had identified appellant. While this may be technically true, there was an inherent reliability in the victim's identification and thus we find no error in the trial court's refusing to impose sanctions upon the government.[11] The reliability of the identification stems from the fact the "Washington" file is an alphabetical file of all persons in this jurisdiction with the last name Washington who have been arrested. The probability that such an alphabetical file would be suggestive in any manner is realistically almost nonexistent. *See Strickland v. United States,* D.C.App., 332 A.2d 746, 747–48, *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). Additionally, the victim's testimony was that he was shown one picture at a time so that the possibility of suggestivity is much less than in a case in which a person is shown 10 photographs at the same time.

---

**8.** There is no indication that a review of the lineup procedures, such as sound recordings of the lineup events, (*see United States v. Eley,* D.C.App., 286 A.2d 239, 241 n. 8 (1972)) was not available to appellant.

**9.** The state of the record here is that appellant asserts that " . . . while it is somewhat speculative, appellant's picture may have been included, perhaps quite by chance, in one or more of the unpreserved arrays from which the Hearns did *not* make any identification." Government testimony was that no such picture appeared in those arrays.

While we agree with appellant that an array which did not produce an identification conceivably might be exculpatory in nature, we do not feel that such a slight possibility requires here an extension of the rule that arrays from which an identification is made must be preserved.

**10.** The victim testified that he had seen seven or eight photographs when he identified appellant. The policeman who showed the victim the pictures, said that the victim had seen thirty to forty photographs when the identification was made.

**11.** *Compare Marshall v. United States,* D.C. App., 340 A.2d 805, 809 (1975).

Appellant's argument that he was denied his Sixth Amendment right to a speedy trial is without merit. In this case just slightly more than one year elapsed between the arrest and trial. Although "[a] delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial," *Branch v. United States*, D.C. App., 372 A.2d 998, 1000 (1977), we think that appellant's claim is sufficiently rebutted by the fact that over two months of the delay was directly attributable to defense counsel's request for a continuance when appellant changed counsel. Additionally, there is no showing that appellant was prejudiced. *See United States v. Calhoun*, D.C. App., 363 A.2d 277, 281 (1976). Appellant was released on bond and later on his own personal recognizance for ten of the twelve months. Almost two months of the delay was due to such routine matters as the preliminary hearing, the return of the indictment, and the arraignment, *see Moore v. United States*, D.C.App., 359 A.2d 299, 302 (1976), and over four months' delay was due to the crowded court's calendar. In addition, appellant did not assert his right to a speedy trial until the eleventh month. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Moore v. United States, supra.* Accordingly, the convictions appealed from are

*Affirmed in part and remanded with instructions to vacate the convictions of robbery and the two related convictions of assault with a dangerous weapon based on counts three and six.*

MACK, Associate Judge, dissenting:

Appellant stands convicted of armed robbery on the basis of the identification testimony of the two victims, husband and wife, who identified appellant in court and testified concerning their lineup identifications; the husband also testified about identifying appellant in a photo array. Appellant's counsel was not present at the lineup; the

photo array was not preserved; and the court's finding of an independent source for the in-court identification is questionable at best, in view of the drastic inconsistencies between appellant's actual appearance and the description initially given by the victims. While each of these problems is serious, I shall address briefly only the first, which in my view requires reversal of this conviction.

Trial counsel was appointed to represent appellant (and six other individuals) prior to his arraignment. Because appellant was also incarcerated on a parole revocation warrant, with no possibility of bond, the over-extended [1] counsel saw him for only a few seconds and deferred a lengthy interview. Thus five days later counsel did not recognize his client, and accepted the police officer's representation that appellant was not in the lineup and no witnesses had arrived. Counsel left. The witnesses arrived. The lineup proceeded without appellant's counsel (and without substitute counsel). The witnesses identified appellant. They were permitted, over objection, to so testify at trial.

In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that a defendant has a Sixth Amendment right to the assistance of counsel at a post-indictment lineup. Appellant Washington was denied that Sixth Amendment right. According to *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), testimony regarding the lineup identification should have been excluded. For as the Supreme Court noted:

Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup. [*Gilbert v. California, supra* at 273, 87 S.Ct. at 1957.]

Yet the majority holds that the admission of this testimony was harmless beyond a reasonable doubt. In this case, where the

---

1. Counsel for the Public Defender Service has represented in this court that PDS lawyers were severely overextended at that time because, due to a funding crisis, many private attorneys were refusing appointments to represent indigents.

*only* evidence linking appellant to the crime was the victims' identification, I cannot agree with my colleagues that there is no "reasonable possibility" that the lineup evidence "might have contributed to the conviction." [2]

[W]e must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one.[3]

I respectfully dissent.

---

**2.** *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), *quoting Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

